KUTCHER v. GRAY, Adm'r of Veterans' Affairs, et al.

No. 11172.

United States Court of Appeals District of Columbia Circuit.

Argued April 10, 1952.

Decided Oct. 16, 1952.

---

1. Act of Oct. 6, 1917, c. 106, § 9, 40 Stat. 419, as amended, 50 U.S.C.A.Appendix, § 9.

2. Fed.Rules Civ.Proc. rule 52(a), 28 U.S. C.A.

Joseph L. Rauh, Jr., Washington, D. C., for appellant.

Edward H. Hickey, Atty., Department of Justice, Washington, D. C., with whom Charles M. Irelan, U. S. Atty., and Joseph Kovner, Atty., Department of Justice, Washington, D. C., were on the brief, for appellees.

Herbert Monte Levy, New York City, of the Bar of the Court of Appeals of New York, *pro hac vice,* by special leave of Court, for American Civil Liberties Union, as *amicus curiae,* urging reversal.

Before WILBUR K. MILLER, PRETTYMAN, and PROCTOR, Circuit Judges.

PROCTOR, Circuit Judge.

This appeal presents several questions involving the President's Loyalty Program and § 9A of the Hatch Act.

Kutcher (appellant), a war veteran and "preference eligible," [1] was employed by the Veterans Administration. Acting under the President's Loyalty Program,[2] a Deputy Administrator proposed Kutcher's removal upon charges of membership in and activities connected with the Socialist Workers Party, an organization listed by the Attorney General as seeking "to alter the form of government of the United States by unconstitutional means." [3]

The charges were heard before a Branch Loyalty Board of the Veterans Administration. Kutcher attended with counsel; admitted membership in the Socialist Workers Party; and testified concerning his political beliefs. The Board found upon all the evidence that "reasonable grounds" existed for belief that Kutcher was "disloyal to the Government of the United States, in accordance with standards [4] set forth in Executive Order No. 9835 dated March 21, 1947," and recommended his removal from employment by the Veterans Administration. He appealed to the Administrator and was suspended pending the outcome.[5] The Administrator also found against Kutcher. However, his decision was not based upon any declared belief in Kutcher's disloyalty, but rested solely upon the ground of Kutcher's admitted membership in the Socialist Workers Party, which the Attorney General had determined to be "an organization that seeks to alter the form of Government of the United States by unconstitutional means." These facts, the Administrator concluded, left him "no choice but to affirm," as "The Veterans Administration is bound by that determination of the Attorney General." As authority for this conclusion the Administrator cited a directive of the Loyalty Review Board,[6] issued after the Branch Board's decision against Kutcher. This document referred to a designation by the Attorney General of certain organizations, including the Socialist Workers Party, as seeking " 'to alter the form of Government of the United States by unconstitutional means,' " and asserted that if an employee or applicant is found to be a member of one of the designated organizations, removal, or refusal of employment, "is mandatory." Appeal was taken from the Administrator's decision to the Loyalty Review Board. They affirmed, upon the ground of Kutcher's active membership in the Socialist Workers Party, and requested his removal by the Veterans Administration. In so ruling the Board adhered to its Memorandum No. 32 of December 17, 1948, and held that "In accordance with the Regulations and Directives of the Loyalty Review Board, the Socialist Workers Party is an organization within the purview of Section 9A of the Hatch Act [7] and Mr. Kutcher's

1. Veterans' Preference Act of June 27, 1944, c. 287, § 2, 58 Stat. 387, as amended 5 U.S.C.A. § 851.

2. Exec. Order No. 9835, March 21, 1947, 5 U.S.C.A. § 631 note, 3 C.F.R. (1947 Supp.).

3. 5 C.F.R. § 210.11(6) (1949 ed.); 5 C.F.R. p. 199, Appendix A (1949 ed.).

4. Exec. Order No. 9835, Part V:
"1. The standard for the refusal of employment or the removal from employment in an executive department or agency on grounds relating to loyalty shall be that, on all the evidence, reasonable grounds exist for belief that the person involved is disloyal to the Government of the United States."

5. Power to suspend an accused "pending a determination with respect to loyalty" is given to the head of the employing department or agency. Exec. Order No. 9835, Part II, Paragraph 4, (J.A. 21).

6. Memorandum No. 32 dated December 17, 1948 (J.A. 31), addressed to all Executive Departments and Agencies.

7. Act of August 2, 1939, c. 410, § 9A, 53 Stat. 1148, 5 U.S.C.A. § 118j.
"(1) It shall be unlawful for any person employed in any capacity by any agency of the Federal Government, whose compensation, or any part thereof, is paid from funds authorized or appropriated by any Act of Congress, to have membership in any political party or organization which advocates the overthrow of our constitutional form of government in the United States.

removal is mandatory." [8]

As a result of the foregoing proceedings Kutcher was removed by the Adminstrator. He then filed a complaint in the District Court praying for reinstatement to his position and for other related relief. Answers were filed with supporting papers, which brought before the District Court the record of the administrative proceedings. Whereupon cross-motions were filed for summary judgment. Fed.Rules Civ. Proc. rule 56, 28 U.S.C.A. The defendants' motion was granted and judgment entered accordingly. This appeal followed.

The discharge of Kutcher is attacked on several grounds, ranging from irregularity in the administrative proceedings to unconstitutionality of § 9A of the Hatch Act and the Executive Order. We shall deal only with those questions essential to the disposition we are making of the case.

It is contended here, as in the District Court, that although the Executive Order required a definitive determination by the Administrator, head of the Agency, as to Kutcher's loyalty, no such determination was made by that officer; therefore that Kutcher was deprived of the requisite review and decision by the Administrator and as a result his discharge was illegal and of no effect. The District Court rejected this contention and adopted that of the defendants. It held that Kutcher had been "initially removed" by the Branch Loyalty Board upon their finding, supported by evidence, that reasonable grounds existed for belief that he was disloyal, according to standards set forth in Executive Order No. 9835; that the action of the Branch Board in removing Kutcher had been "affirmed" by the Administrator and the Loyalty Review Board, and that "The grounds for the

affirmation were immaterial." The practical result of this ruling was to give final effect to the Branch Board's decision, notwithstanding Kutcher's appeal to the Administrator.

■ Proceedings governing removal of a disloyal employee from the public service are laid down by Executive Order No. 9835. If the employee be a "preference eligible," the administrative process must also conform to requirements of § 14 of the Veterans' Preference Act.[9] Although sufficiency of the notice to Kutcher is not questioned, the point is made that his discharge could not have been for "efficiency of the service," as the Preference Act contemplates. In support of this proposition reference is made to undisputed evidence that Kutcher had performed his duties efficiently and that his position was of a "nonsensitive" nature. But § 14 has reference to efficiency of the public service as a whole, rather than efficiency of performance by a single employee. So we think it cannot be argued that removal of a disloyal employee is not promotive of the "efficiency of the service," as that phrase is used in § 14. As the President declared in his Order 9835, "it is of vital importance that persons employed in the Federal service be of complete and unswerving loyalty to the United States." Furthermore, it is well settled "that the administrative determination by the employing agency of what constitutes cause for discharge will not be judicially reviewed." Carter v. Forrestal, 85 U.S.App.D.C. 53, 54, 175 F.2d 364, 365, certiorari denied, 1949, 338 U.S. 832, 70 S.Ct. 47, 94 L.Ed. 507, and cases cited therein.

■ We come then to the crucial question. Did Kutcher have the procedural

"(2) Any person violating the provisions of this section shall be immediately removed from the position or office held by him, and thereafter no part of the funds appropriated by any Act of Congress for such position or office shall be used to pay the compensation of such person."

8. J.A. 34.

9. Act of June 27, 1944, c. 287, § 14, 58 Stat. 390, as amended Aug. 4, 1947, c.

447, 61 Stat. 723, 5 U.S.C.A. § 863, provides in part that:

"No * * * preference eligible * * * shall be discharged, suspended for more than thirty days * * * or debarred for future appointment except for such cause as will promote the efficiency of the service * * * and * * * shall have at least thirty days' advance written notice * * * stating any and all reasons, specifically and in detail, for any such proposed action * * *."

benefits of Executive Order 9835? Standing accused of disloyalty as a cause for removal from employment, he was entitled to the benefit of all the safeguards provided by that Order. It was necessary for the proceedings to conform in all substance to the requirements of the Order. United States v. Wickersham, 1906, 201 U.S. 390, 26 S.Ct. 469, 50 L.Ed. 798; Deak v. Pace, 1950, 88 U.S.App.D.C. 50, 185 F.2d 997; Borak v. Biddle, 78 U.S.App.D.C. 374, 141 F.2d 278, certiorari denied, 1944, 323 U.S. 738, 65 S.Ct. 42, 89 L.Ed. 591.

Turning to the Order we find that each department and agency head is charged with personal responsibility for effective execution of the Loyalty Program in his department or agency.[10] He is directed to appoint one or more "loyalty boards"[11] for the purpose of hearing loyalty cases arising within his department or agency *and making recommendations with respect to the removal* of any officer or employee therein *on grounds relating to loyalty.*[12] A recommendation of removal by a loyalty board is "subject to appeal" before removal, to the *head of the employing agency,* and his decision is subject to appeal to the Civil Service Commission's Loyalty Review Board *"for an advisory recommendation"* [13] (Emphasis added.) Provision is made for establishment of the Loyalty Review Board within the Civil Service Commission,[14] with "authority to review cases involving persons recommended for dismissal on grounds relating to loyalty by the loyalty board [15] of any department or agency and *to make advisory recommendations thereon to the head of the employing department or agency."* [16] (Emphasis added.) Finally, there is the provision that "The standard for the refusal of employment or the removal from employment * * *

on grounds relating to loyalty shall be that, on all the evidence, reasonable grounds exist for belief that the person involved is disloyal to the Government of the United States." [17]

In the light of these explicit provisions of the Executive Order we think there can be no doubt that the decision of the Branch Board was in legal effect exactly what the Executive Order declares it should be, a "recommendation" to the Administrator for Kutcher's removal. It was just that,—nothing more. The final decision rested with the Administrator. Upon him fell the duty to impartially determine on all the evidence whether there were reasonable grounds for belief that Kutcher was disloyal to the Government of the United States. That was the ultimate, the controlling issue. Kutcher was entitled to the Administrator's decision of that very question. But the Administrator neither considered nor decided it. Instead, following the dictum of the Loyalty Review Board in its Memorandum No. 32, the Administrator held only that Kutcher's admitted membership in the Socialist Workers Party made his removal mandatory under § 9A of the Hatch Act, in accordance with the Attorney General's determination that the organization was one which sought to alter our form of Government by unconstitutional means. This is in substance the contention now made here by appellees. But that argument has its fatal weakness. Neither § 9A of the Hatch Act nor the Executive Order does in terms proscribe membership in the Socialist Workers Party by an employee, and neither Congress nor the President has seen fit to make membership in any organization designated by the Attorney General cause for removal from Government em-

---

10. Exec. Order No. 9835, Part II, Paragraph 1b, (J.A. 20).

11. Commonly referred to as Branch Loyalty Boards.

12. Exec. Order No. 9835, Part II, Paragraph 2, (J.A. 20).

13. Exec. Order No. 9835, Part II, Paragraph 3, (J.A. 21).

14. Id., Part III, Paragraph 1, (J.A. 22).

15. This can only have reference to the recommendation of a branch loyalty board.

16. Exec. Order No. 9835, Part III, Paragraph 1a, (J.A. 22).

17. By Amendment of April 28, 1951, (after Kutcher case) reasonable doubt as to loyalty is made the measure of proof. Exec. Order No. 10241, 3 C.F.R. (1951 Supp.).

ployment. On the contrary, the Executive Order, coming after the Hatch Act and designed in part to implement that Act in a fair and practicable way, makes disloyalty the test, and membership in organizations designated by the Attorney General, including those seeking to alter the form of Government by unconstitutional means, merely a factor "which may be considered in connection with the determination of disloyalty."[18] If any clarification is needed for this provision, which seems to us very clear, it is found in a statement of the President, November 14, 1947,[19] that " 'Membership in an organization is simply one piece of evidence which may or may not be helpful in arriving at a conclusion as to the action which is to be taken in a particular case.' " So too, the Attorney General in transmitting his list of subversive organizations to the Loyalty Review Board advised that " 'In connection with the designation of these organizations I wish to reiterate, as the President has pointed out, that it is entirely possible that many persons belonging to such organizations may be loyal to the United States; that membership in, affiliation with or sympathetic association with, any organization designated, is simply one piece of evidence which may or may not be helpful in arriving at a conclusion as to the action which is to be taken in a particular case. * * *' (Letter of November 24, 1947 to Seth W. Richardson, Chairman, Loyalty Review Board, Civil Service Commission, Washington, D.C.)"[20] It is significant too that although the Executive Order was promulgated March 21, 1947, nothing has since been done by Congress or the President to alter the original scheme of the Loyalty Program instituted by Executive Order No. 9835, making disloyalty to the Government the bar to employment, rather than membership or activity in a designated organization. Al-

though the Executive Order empowers the Loyalty Review Board to make rules not inconsistent with provisions of the Order and advise departments and agencies on problems relating to employee loyalty,[21] we must conclude from the plain provisions of the Order that the ruling or advice of the Board in its Memorandum 32 is inconsistent with these provisions. Therefore it is without validity or force and should be disregarded. Addison v. Holly Hill Fruit Products, Inc., 1944, 322 U.S. 607, 64 S.Ct. 1215, 88 L.Ed. 1488; Waite v. Macy, 1918, 246 U.S. 606, 38 S.Ct. 395, 62 L.Ed. 892; Hamilton National Bank v. District of Columbia, 1946, 81 U.S.App. D.C. 200, 203, 156 F.2d 843, 846.

We do not mean to suggest that membership in and activities connected with a designated organization may not, in the circumstances of a case, justify disbelief in the loyalty of an employee. Obviously such evidence might fairly support that conclusion, and so require an employee's removal. Yet in each instance it rests with the head of the department or agency to make the final and controlling determination. In this case, involving Kutcher's loyalty, the vital question still awaits the Administrator's decision.

One other contention must be noticed. Appellant attacks the competency as evidence of the designation by the Attorney General of the Socialist Workers Party as an organization seeking to alter our form of government by unconstitutional means. This action resulted from the Executive Order, which charts the procedure for carrying out the Loyalty Program. As we have shown, the Order requires the Department of Justice to furnish the Loyalty Review Board with the names of organizations inimical to our form of government, including those seeking to alter its form by unconstitutional means.[22] It di-

18. Exec. Order No. 9835, Part V, Paragraph 2, (J.A. 24).

19. 5 C.F.R. § 200.1 (1949 ed.).

20. Appellant's brief, p. 18. See also Joint Anti-Fascist Refugee Committee v. McGrath, 1951, 341 U.S. 123, 205–207,

71 S.Ct. 624, 95 L.Ed. 817, 871–872, (Mr. Justice Reed dissenting).

21. Exec. Order No. 9835, Part III, Paragraphs 1b and 1c(1), (J.A. 22).

22. Exec. Order No. 9835, Part III, Paragraph 3, (J.A. 23).

rects the Board to disseminate that information to all departments and agencies.[23] It also provides, as heretofore indicated, that membership in or affiliation with any organization designated by the Attorney General as seeking to alter the form of Government by unconstitutional means may be considered in determining the question of disloyalty.[24] In fulfillment of these express provisions of the Executive Order the Socialist Workers Party came to be classified by the Attorney General as an organization of that character, and was so received in the Kutcher case for consideration in determining the issue of disloyalty. In Bailey v. Richardson, 1950, 86 U.S.App. D.C. 248, 182 F.2d 46, affirmed by an equally divided Court, 1951, 341 U.S. 918, 71 S.Ct. 669, 95 L.Ed. 1352, we held that proceedings against an applicant or employee under the Loyalty Program are purely administrative in character, in no sense criminal, and do not require the constitutional and traditional safeguards of a judicial trial. Adhering to that view, we now hold that the Attorney General's designation of the Socialist Workers Party was competent evidence in the administrative proceedings against Kutcher.[25] Both the

designation, and its consideration in those proceedings, fell directly within the scope of the Executive Order, and come fairly within the bounds of our decision in the Bailey case.

We do not think, as appellant contends, that the Hatch Act alters the situation. Section 9A [26] thereof is the only part with any direct relation to the charges against Kutcher. It nowise limits the broad sweep of the President's power as recognized in the Bailey opinion; rather does it give support to the Executive Order.

In accordance with the views expressed, the order of the District Court dismissing the complaint is reversed; the cause is remanded with directions to enter judgment setting aside the order removing Kutcher from employment, without prejudice to the order suspending Kutcher and consideration and determination by the Administrator of the ultimate issue as to whether on all the evidence reasonable grounds exist for belief that Kutcher is disloyal to the Government of the United States; and for such further action by the Administrator as may be consistent with his decision made upon that issue.

Reversed and remanded.

23. Id., Part III, Paragraph 3a, (J.A. 23).

24. Id., Part V, Paragraph 2f, (J.A. 25).

25. Appellant cites United States v. Remington, 2 Cir., 1951, 191 F.2d 246, and Joint Anti-Fascist Refugee Committee v. McGrath, 1951, 341 U.S. 123, 71 S.Ct. 624, 95 L.Ed. 817, for the proposition that the Attorney General's designation is purely hearsay, and that such designation is improper if done without notice and hearing. Assuming such to be true, neither of these cases considered the use of such "designation" as evidence in a removal proceeding under the President's Loyalty Program. The Remington case was a criminal case involving a prosecution for perjury. Obviously, the Attorney General's list would not be competent evidence in a criminal proceeding. The Joint Anti-Fascist case considered only the narrow point whether an organization, listed by the Attorney General without notice and hearing, had a cause of action against the Attorney General.

26. Supra note 7.