Max SHACHTMAN, Appellant,

v.

John Foster DULLES, Individually and as Secretary of State, et al., Appellees.

No. 12406.

United States Court of Appeals District of Columbia Circuit.

Argued Feb. 23, 1955.

Decided June 23, 1955.

12. 38 Stat. 737 (1914), 15 U.S.C.A. § 26.

13. 38 Stat. 731 (1914), 15 U.S.C.A. § 15.

Mr. Joseph L. Rauh, Jr., Washington, D. C., with whom Messrs. Daniel H. Pollitt and Mitchell J. Cooper, Washington, D. C., were on the brief, for appellant.

Mr. Harold H. Greene, Asst. U. S. Atty., with whom Messrs. Leo A. Rover, U. S. Atty., and Lewis Carroll and Joseph M. F. Ryan, Jr., Asst. U. S. Attys., were on the brief, for appellees.

Before EDGERTON, FAHY, and WASHINGTON, Circuit Judges.

FAHY, Circuit Judge.

Appellant sued in the District Court to enjoin the Secretary of State [1]

1. Other appellees than the Secretary, who are officials of the Department of State concerned with the issuance of passports, are omitted in the text of the opinion as a matter of convenience and simplification.

from denying,.for the reason assigned by the Secretary, his application for a passport to visit Europe, and for a declaratory judgment. His complaint was dismissed on motion, the court holding that it failed to state a claim upon which relief could be granted and that since the denial was in the proper exercise of the Secretary's discretion the court lacked jurisdiction. Appellant does not ask that the Secretary be required by the court to issue the passport. He seeks in this court only a ruling to the effect that the denial thus far has been on a ground that is legally insufficient. This position assumes that the discretion residing in the Secretary, see 44 Stat. 887, 22 U.S. C.A. § 211a, is subject in its exercise to some judicial scrutiny. We agree. The courts by reason of the Constitution have a responsibility in the matter although a limited one.

■ In the statute referred to Congress has placed the issuance of passports in the hands of the Secretary under rules prescribed by the President. These provide, "The Secretary of State is authorized in his discretion to refuse to issue a passport". 22 CFR § 51.75 (1949). However, in Perkins v. Elg, 307 U.S. 325, 349–350, 59 S.Ct. 884, 83 L.Ed. 1320, the Supreme Court, while stating that the Court's action would not interfere with the Secretary's discretion, precluded denial of a passport for the asserted reason that the applicant had lost her American citizenship, when she had not done so. Though that case factually is not like this one, it nevertheless shows that the subject of passports is not entirely beyond judicial assistance. And this is so notwithstanding. the relation of the subject to the Executive's power over the conduct of foreign affairs, for it too, "like every other governmental power, must be exercised in subordination to the applicable provisions of the Constitution." United States v. Curtiss-Wright Export Corp., 299 U.S. 304, 320, 57 S.Ct. 216, 221, 81 L.Ed. 255; Bauer v. Acheson, D.C.D.C., 106 F.Supp. 445, 451.[2]

■ Is there a provision of the Constitution. applicable to the present situation? In answering this we bear in mind that the issuance of a passport is not a purely political matter. If it were it would be a non-justiciable one. In other words, a passport is no longer a document "purporting only to be a request, that the bearer of it may pass safely and freely"; it is no longer "to be considered rather in the character of a political document, by which the bearer is recognised, in foreign countries, as an American citizen * * *", Urtetiqui v. D'Arcy, 9 Pet. 692, 699, 34 U.S. 692, 698, 9 L.Ed. 276. This description parallels early rulings of Secretaries of State, opinions of Attorneys General, texts and other court decisions, which have recognized a great breadth of Executive authority and discretion.[3]

■ We do not suggest that a passport is no longer a political document, or that its issuance is not allied to, and at times a part of, the conduct of foreign affairs, see Communist Party of U. S. A. v. Subversive Activities Control Board, 96 U.S.App.D.C. ——, 223 F.2d 531; but only that it is not merely of this character. For it is now, in addition, a document which is essential to the lawful departure of an American citizen for Europe. Regulations now in effect and au-

2. The writer of this opinion dissented in Bauer v. Acheson because he thought the case was one for a single District judge rather than for a specially constituted three-judge District Court. Accordingly he expressed no opinion upon the merits.

3. 13 Op.Atty.Gen. 89, 92; 23 Op.Atty. Gen. 509, 511; 3 Hackworth, Digest of International Law (1942) pp. 467–8; 3 Moore, Digest of International Law, § 512 (1906); Miller v. Sinjen, 8 Cir., 289 F. 388, 394; Communist Party of U. S. A. v. Subversive Activities Control Board, 96 U.S.App.D.C. ——, 223 F.2d 531. The general subject is discussed in 41 Georgetown L.J. 63; 3 Stanford L.Rev. 312; 61 Yale L.J. 171; ꞇꞇꞇars v. United States, 87 U.S.App.D.C. 16, 35, 182 F.2d 962, 981.

thorized by Congress so provide.[4] Earlier in our history, except, e. g., during the War between the Sections, this was not the case. It was then a desirable incident to travel, not a necessity, and was granted more or less at the pleasure of the Executive. See Gillars v. United States, 87 U.S.App.D.C. 16, 35, 182 F.2d 962, 981. Now it is unlawful for a citizen to travel to Europe and impossible to enter European countries without a passport. See n. 4, supra.

■ The denial of a passport accordingly causes a deprivation of liberty that a citizen otherwise would have. The right to travel, to go from place to place as the means of transportation permit, is a natural right subject to the rights of others and to reasonable regulation under law. A restraint imposed by the Government of the United States upon this liberty, therefore, must conform with the provision of the Fifth Amendment that "No person shall be * * * deprived of * * * liberty * * * without due process of law".

■ It is not procedural due process that is involved in the case as now presented. There is no complaint the Secretary has failed to disclose the reason for his denial of the passport. Furthermore, a hearing of a sort was granted appellant.[5] He was at least given an opportunity to state informally to an official of the Department the matters on which he relied in rebuttal of the reason given by the Department for refusing him a passport. Cf. Bauer v. Acheson, supra; Nathan v. Dulles, D.C. D.C., 129 F.Supp. 951. What is involved at the present stage is a question of substantive due process—whether the refusal for the reason given, as alleged in the complaint and undisputed thus far by the Secretary, was arbitrary. If so, it is not a valid foundation for the denial, for the Government may not arbitrarily restrain the liberty of a citizen to travel to Europe. Discretionary power does not carry with it the right to its arbitrary exercise. Otherwise the existence of the power itself would encounter grave constitutional doubts. See Association of Westinghouse Salaried Employees v. Westinghouse Elec. Corp., 348 U.S. 437, 453, 75 S.Ct. 488.

■ What is arbitrary, however, in the sense of constituting a denial of due process, depends upon circumstances. Moyer v. Peabody, 212 U.S. 78, 84, 29 S.Ct. 235, 53 L.Ed. 410; Yakus v. United States, 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834. Restraint upon travel abroad might be reasonable during an emergency though in normal times it would be arbitrary. World conditions, and those in particular areas, as to which the Executive has special information and on the basis of which he is especially qualified to make decisions, bear upon the

---

4. 66 Stat. 190, 8 U.S.C.A. § 1185(a, b), provides that when the United States is at war or during the existence of a national emergency proclaimed by the President, if the President shall find that the interests of the United States require additional restrictions and prohibitions to those otherwise provided with respect to the departure of persons from and their entry into the United States, and shall so proclaim, it shall be unlawful, except as otherwise provided by the President, and subject to limitations and exceptions authorized by him, for any citizen of the United States to depart from or enter the United States "unless he bears a valid passport." The President has made a proclamation which brings these provisions into effect. Proclamation No. 3004, 18 Fed.Reg. 489, 67

Stat. c31, issued January 17, 1953, U. S. Code Congressional and Administrative News 1953, p. 915; see 22 CFR § 53.1 (1949). No exception has been created for Europe.

5. We need not here decide, however, whether the hearing complied with all procedural requirements. On June 2, 1955, in No. 12,727, Dulles v. Nathan, this court stayed an order that required the Secretary to issue a passport, but did so on conditions, one of which was that a quasi-judicial hearing be held. The material portions of the order of June 2, 1955, are contained in the opinion dismissing the Nathan case as moot. See Dulles v. Nathan, 96 U.S.App.D.C. ——, 225 F. 2d 29.

question. For reasons thus suggested the issuance of passports throughout our history has been left to the judgment of the Secretary of State under Presidential regulation, and is subject only to constitutional safeguards. And even these must be defined with cautious regard for the responsibility of the Executive in the conduct of foreign affairs.[6]

■ The appellant's own statement in the complaint of the reason he was refused a passport must be taken as true in the present posture of the case, for the Secretary has not answered the complaint. Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 71 S.Ct. 624, 95 L.Ed. 817. We must take it as true, then, that appellant was first notified of tentative disapproval because of information he was Chairman of the Independent Socialist League, which the Secretary understood had been classified by the Attorney General[7] as both subversive and Communistic, although it appeared to the Secretary the organization had no direct connection with the Communist International. The Secretary also notified appellant that the Department had been advised that the League's publication described the organization as an "organ of revolutionary Marxism". At the hearing granted appellant by the Department of State, he testified the League was anti-Stalinist, anti-totalitarian, opposed to violence as a means of solving political, social and economic problems, and that he and the League believed in and strove for the establishment of a socialist economic system by democratic means. He explained that the decription of the organ above referred to meant only that the League and he stood for a thorough-go-

ing reorganization of the economic and social foundations of society but used the term "revolutionary" with reference to the result rather than the means of achieving it. At the hearing he said the League advocated the formation by the labor movement of a labor party similar to the Labor Party of Great Britain. The complaint further alleges that the League has never had any international affiliations; that appellant desired a passport solely for the purpose of consulting people in Europe whose knowledge of political conditions he respected, and observing those conditions in order to acquire material for his work of writing and lecturing; that he had no intention of engaging in any political activity abroad, and would not engage there in activities which would violate the laws of, reflect upon or embarrass, the United States.

The complaint then alleges that the passport was subsequently denied in a letter to appellant in which the Department stated that despite the fact that the League had no connection with the Communist International and was hostile thereto, the Department felt that it would be contrary to the best interests of the United States to grant passport facilities to the actual head of an organization which had been classified by the Attorney General as subversive, especially when he desired to travel abroad on behalf of the organization, adding that should there be a change in the classification by the Attorney General the Department would then give further consideration to the question. The wording of the Department's letter indicates that the listing of the League as Communistic was no longer relied upon. The hearing

---

6. This is emphasized by Rev.Stat. § 2001, 22 U.S.C.A. § 1732, which imposes the duty upon the President, in event it is made known to him that a citizen has been unjustly deprived of his liberty by or under the authority of any foreign government, to demand the reason therefor. If it appears to be wrongful and in violation of his rights the President is to demand release, and if this is unreasonably delayed or refused, he shall

use such means not amounting to acts of war as he may think necessary and proper to obtain or effectuate release.

7. The classification or listing by the Attorney General is made under authority of Executive Order No. 9835, of March 21, 1947, 3 CFR pp. 129–33 (Supp.1947), 5 U.S.C.A. § 631 note, having to do with the loyalty of Government employees. See Joint Anti-Fascist Refugee Committee v. McGrath, supra.

appears to have convinced the Department that the League was hostile to the Communist International.

Appellant in the end alleges that the passport was denied "solely because of the inclusion of the Independent Socialist League on the Attorney General's List", that this listing was without notice or hearing or presentation of evidence or opportunity to answer, and that appellant, as National Chairman of the League, for nearly six years and on at least fifteen separate occasions, without avail, had attempted to persuade the Attorney General to grant a hearing to the League so that it could prove the injustice of the designation.[8]

We think the complaint fairly read shows that the listing of the League by the Attorney General as subversive was the reason for the Secretary's refusal to issue the passport, that is to say, that except for such listing the fact that appellant was head of the organization and wished to go to Europe on its business would not have been considered by the Secretary as ground for rejection of his application. Therefore, with no answer by the Department, we must decide whether this listing, followed by nearly six years of effort by appellant to obtain a hearing thereon, is sufficient basis for the Secretary's refusal, when considered with the undenied allegations of the complaint that the listing is erroneous.

 We do not here characterize as invalid, for its own purposes, the listing by the Attorney General. He is not a party, and, in any event, his listing is not subject to collateral attack in these proceedings. We are called upon only to consider the use made by the Secretary of the listing. Reliance by the Secretary on action by the Attorney General is not precluded. Warning given by the Nation's chief law officer can at least lead to investigation, and in a proper case be an element in decision. But in the present state of the pleadings we must take it as a fact that the League is non-subversive as well as non-Communistic, and has sought for nearly six years the opportunity to demonstrate the former to the Attorney General as it appears to have demonstrated the latter to the Secretary.

 While in this court the Government advances additional reasons for the denial of the passport these are not those alleged or shown by any pleading to have been relied upon by the Secretary. Therefore, we may not pass upon their sufficiency. Securities and Exchange Commission v. Chenery Corp., 318 U.S. 80, 95, 63 S.Ct. 454, 87 L.Ed. 626. For it is not for us to determine, in this case at least, that a passport should or should not be granted, but only whether the reason given by the Secretary for its denial is sufficient. As to this, we think the law must consider to be arbitrary, regardless of good faith, refusal of appellant's application only because the League was listed by the Attorney General as subversive when appellant in detail denies the correctness of this characterization, alleges lack of opportunity so to demonstrate, and when these allegations are not challenged by the Secretary. In these circumstances a sufficient basis for the action of the issuing authority apart from the mere listing must appear.[9] For us to hold that the restraint thus imposed upon appellant is not arbitrary would amount to judicial approval of a deprivation of liberty without a reasonable relation to the conduct of foreign affairs. Unless some additional reason is supplied for the denial, a citizen is prevented indefinitely from traveling to Europe while at the same time it is impossible for him to remove the cause, even though we

8. Attached to the complaint is an appendix enumerating in detail and chronologically the alleged efforts of appellant to obtain a hearing before the Attorney General.

9. No suggestion is made here that the basis for the denial may not be disclosed, for reasons of national security or otherwise.

must assume in the present state of the pleadings that he would be able to do so if afforded the opportunity. If there is something which justifies this it should be set forth by an answer to the complaint. Otherwise the denial, judged on the basis alone of the appellant's allegations, creates a situation which the law cannot reconcile with due process. It is worth noting in this connection that when the Attorney General lists an organization for purposes of standards of Federal employment prescribed by the President, which was the occasion for the listing of the League, a separate judgment by the employing agency of the fitness of the individual employee who is a member of the organization is required before removing him from public service. The listing alone is not enough. Kutcher v. Gray, 91 U.S.App.D.C. 266, 270, 199 F.2d 783, 787. Cf. Jason v. Summerfield, 94 U.S.App.D.C. 197, 214 F.2d 273, certorari denied 348 U.S. 840, 75 S.Ct. 48.

 We must not confuse the problem of appellant's application for a passport with the conduct of foreign affairs in the political sense, which is entirely removed from judicial competence. For even though his application might be said to come within the scope of foreign affairs in a broad sense, it is also within the scope of the due process clause, which is concerned with the liberty of the individual free of arbitrary administrative restraint. There must be some reconciliation of these interests where only the right of a particular individual to travel is involved and not a question of foreign affairs on a political level.

Reversed and remanded for further proceedings not inconsistent with this opinion.

EDGERTON, Circuit Judge.
I concur in the opinion of the court.

The Supreme Court has said: "Undoubtedly the right of locomotion, the right to remove from one place to another according to inclination, is an attribute of personal liberty, and the right, ordinarily, of free transit from or through the territory of any State is a right secured by the 14th Amendment and by other provisions of the Constitution." [1] Freedom to leave a country or a hemisphere is as much a part of liberty as freedom to leave a State.

Those who inflict a deprivation of liberty are not the final arbiters of its legality. Due process of law is a judicial question.

Arbitrary action is not due process of law. Taking the facts alleged in the complaint to be true, as we must on this record, denial of a passport to Shachtman because the Independent Socialist League was on the Attorney General's list was arbitrary for several reasons.

1. The League is "an anti-Communist educational organization." In this respect the case is similar to Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 71 S.Ct. 624, 95 L.Ed. 817.[2]

2. The Passport Division knew plaintiff had tried and failed to get the Attorney General to give the League a hearing.

3. The premise that a man is not fit to work for the government does not support the conclusion that he is not fit to go to Europe. The Attorney General's list was prepared for screening government employees, not passport applicants.

4. Even in connection with screening government employees, membership in a listed organization was intended to be only an inconclusive item of evidence.

5. In other connections, the list has not even any "competency to prove the

1. Williams v. Fears, 179 U.S. 270, 274, 21 S.Ct. 128, 129, 45 L.Ed. 186. The case involved a state tax on "emigrant agents". The Court sustained the tax because it did not, unless perhaps "incidentally and remotely", affect "freedom of egress from the State".

2. That case, like this, arose on motion to dismiss.

subversive character of the listed associations * * *." [3]

The defendants cannot bring their denial of a passport into conformity with due process of law by merely ceasing to base the denial on the Attorney General's list. Due process requires more than that a deprivation of liberty be not based on facts that are insufficient. It requires that a deprivation be based on facts that are sufficient and are found after a hearing. In Bauer v. Acheson, D.C.D.C., 106 F.Supp. 445, a three-judge District Court interpreted the Passport Act as requiring a hearing when a passport is revoked or its renewal is refused. The District Court for the District of Columbia has recently held that a hearing is necessary before a passport is denied. Nathan v. Dulles, D.C.D.C., 129 F. Supp. 951.

The government urges that a passport involves foreign relations and that the issuance of a passport is therefore in the exclusive control of the State Department. But the State Department's control of activities that involve both foreign relations and domestic liberties is not exclusive. If it were exclusive, the State Department could put an American citizen in jail and keep him there permanently on the mere request of a foreign government. "[T]he very delicate, plenary and exclusive power of the President as the sole organ of the federal government in the field of international relations * * * like every other governmental power, must be exercised in subordination to the applicable provisions of the Constitution." United States v. Curtiss-Wright Export Corp., 299 U.S. 304, 320, 57 S.Ct. 216, 221, 81 L.Ed. 255. "Since denial of an American passport has a very direct bearing on the applicant's personal liberty to travel outside the United States, the executive department's discretion, although in a political matter, must be exercised with regard to the constitutional rights of the citizens * * *." Bauer v. Acheson, D.C.D.C., 106 F.Supp. 445, 451.

To speak of "the Secretary's discretion with respect to the issue of a passport", Perkins v. Elg, 307 U.S. 325, 350, 59 S. Ct. 884, 896, 83 L.Ed. 1320, is not to say that the Secretary may in his discretion deprive a citizen of liberty without due process of law. Moreover, in 1939, when Perkins v. Elg was decided, Americans could, as now they cannot, leave the country for any destination without a passport. Yet even then, the Supreme Court overruled the Secretary's action in denying a passport.

Neither the Passport Act nor any Executive Order should be interpreted as intended to authorize the Secretary of State to deny a passport arbitrarily or without a hearing. "We must, of course, defer to the strong presumption * * * that Congress legislated in accordance with the Constitution. Legislation must, if possible, be given a meaning that will enable it to survive." Association of Westinghouse Salaried Employees v. Westinghouse Electric Corp., 348 U.S. 437, 452–453, 75 S.Ct. 488, 496, rehearing denied 349 U.S. 925, 75 S.Ct. 657.

Augustus N. Hand and Learned Hand,
Circuit Judges.

---

3. United States v. Remington, 2 Cir., 191 F.2d 246, 252; Swan, Chief Judge, and