**Leonard B. BOUDIN, Plaintiff,**

v.

**John Foster DULLES, Secretary of State, Defendant.**

**Civ. A. No. 3850–55.**

United States District Court
District of Columbia.

Nov. 22, 1955.

Harry I. Rand, Washington, D. C., for plaintiff.

Joseph A. Rafferty, Jr., Asst. Dist. Atty., Washington, D. C., for defendant.

YOUNGDAHL, District Judge.

This cause came on to be heard on plaintiff's motion for summary judgment and preliminary injunction, and defendant's motion for summary judgment and opposition to the motions of plaintiff.

Plaintiff is a native-born citizen of the United States and a practicing attorney. He filed an application for a passport on April 28, 1954, to go to Europe, primarily to consult with and advise certain of his clients resident there. His passport application was disapproved, tentatively, by Mrs. Ruth B. Shipley, then Director of the Passport Office. Subsequently plaintiff was issued a limited passport for travel in specified countries in Europe for a period limited to four months after he executed an affidavit in which he stated, among other things, that he was not then a member of the Communist Party. On October 20, 1954, after his trip, plaintiff requested that the restrictions imposed be removed from his passport. He was asked to execute an affidavit relating to his past membership in the Communist Party. This he declined to do but was informed that he would be issued a standard passport, nevertheless. Upon reconsideration, the Department of State, on February 24, 1955, informed plaintiff that he was not eligible for further passport facilities under Section 51.135 of

the Passport Regulations.[1] On March 24, 1955, plaintiff appealed to the Board of Passport Appeals of the Department of State. A hearing was held on May 6, 1955, after which the Board recommended to the Secretary of State that the decision of the Passport Office be affirmed. This the Secretary did and on May 27, 1955, plaintiff was so informed.

On August 30, 1955, plaintiff instituted the present action seeking a declaratory judgment that he is entitled to a passport; that the passport regulations and rules of the Board of Passport Appeals, under which he was denied a passport, are invalid and unconstitutional; and that injunctive relief be granted requiring the Secretary to issue him a passport.

On October 17, 1955, an affidavit of the Secretary of State was filed in this court setting forth the reasons for his denial of passport facilities. These reasons were based on a review of the State Department's files on the plaintiff, confidential security information, and testimony of the plaintiff before the Board of Passport Appeals.

It must now be accepted that travel abroad is more than a mere privilege accorded American citizens. It is a right, an attribute of personal liberty, which may not be infringed upon or limited in any way unless there be full compliance with the requirements of due process. Shachtman v. Dulles, D.C.Cir., 1955, 225 F.2d 938; Bauer v. Acheson, D.C.1952, 106 F.Supp. 445; Williams v. Fears, 1900, 179 U.S. 270, 274, 21 S.Ct. 128, 45 L.Ed. 186. Travel beyond the confines of our sovereign borders requires the possession of a passport. It is not only unlawful for a citizen to travel to Europe without a passport but it is virtually impossible to enter a European country without one. See 8 U.S. C. 1185, and Shachtman v. Dulles, supra The denial of a passport must therefore comply with due process requirements. This is especially true where, as here, an unwarranted denial may constitute both a deprivation·of personal liberty and of property, for plaintiff does receive legal fees from his European clients.

The rather contradictory shifts in position by the Government regarding this plaintiff renders suspect the standard for determining the right to a passport under Section 51.135 of the Passport Regulations. Nevertheless, the Court is satisfied that the Secretary of State is necessarily empowered to make reasonable classifications of persons who are to be granted or denied passports. While Section 51.135 does not appear to set forth an unreasonable classification, it must be conceded that it is sweeping in nature and does permit exceedingly wide discretion to the Department of State to deny passports. This being so, fair play requires that one have the opportunity

---

1. § 51.135 *Limitation on Issuance of Passports to Persons Supporting Communist Movement.* In order to promote the national interest by assuring that persons who support the world Communist movement of which the Communist Party is an integral unit may not, through use of United States passports, further the purposes of that movement, no passport, except one limited for direct and immediate return to the United States, shall be issued to:

(a) Persons who are members of the Communist Party or who have recently terminated such membership under such circumstances as to warrant the conclusion—not otherwise rebutted by the evidence—that they continue to act in furtherance of the interests and under the discipline of the Communist Party;

(b) Persons, regardless of the formal state of their affiliation with the Communist Party, who engage in activities which support the Communist movement under such circumstances as to warrant the conclusion—not otherwise rebutted by the evidence—that they have engaged in such activities as a result of direction, domination, or control exercised over them by the Communist movement.

(c) Persons, regardless of the formal state of their affiliation with the Communist Party, as to whom there is reason to believe, on the balance of all the evidence, that they are going abroad to engage in activities which will advance the Communist movement for the purpose, knowingly and willfully of advancing that movement.

to challenge the basis of, and reasons for, a denial under this Section directly and specifically. Yet Section 51.170, adopted by the Board of Passport Appeals on December 30, 1953, reads:

"In determining whether there is a preponderance of evidence supporting the denial of a passport the Board shall consider the entire record, including the transcript of the hearing and such confidential information as it may have in its possession. The Board shall take into consideration the inability of the applicant to meet the information of which he has not been advised, specifically or in detail, or to attack the credibility of confidential informants."

 The Court must consider Sections 51.135 and 51.170 together. In so doing, it becomes evident that the Passport Office retains substantially unrestricted discretion to deny passports under substantive classification 51.135. Facts which they consider warrant a denial need never appear on record. Whether, in fact, evidence exists to warrant a denial, neither an applicant nor the courts can ever know. The source, quality, or quantity of evidence which has guided the Board and been instrumental in its decision can be reviewed by no one. This cannot fairly be held to constitute reasonable regulation. It must be viewed as conferring upon the Board limitless authority. Any hearing provided an applicant becomes an empty gesture. Consider this case. In explaining to plaintiff why his application had been denied the Director of the Passport Office, on February 24, 1955, wrote:

"Evidence has been obtained that you are a member of the Communist Party, and reports of your activities in recent years indicate that if your membership was terminated it was under such circumstances as warrant the conclusion, not otherwise rebutted by the evidence, that you continue to act in the furtherance and under the discipline of the Communist Party."

Does this mean that all the Passport Office need do is restate the wording of § 51.135(a) to deny a passport? Such conclusion is suggested, as evidence supporting the above statement scarcely appears in the record, although it may well be found in some secret file. Consider also the letter to plaintiff from Mr. John W. Sipes, Counsel of the Board of Passport Appeals, dated April 19, 1955. It informed plaintiff what was indicated in the confidential files, but not what evidence was actually contained in the files or the source of such evidence. To the same effect is the affidavit of John Foster Dulles, Secretary of State. His decision to deny plaintiff a passport rested, so he stated, " * * * on a pattern of associations and activities on the part of plaintiff over an extended period of time leading to the conclusion that plaintiff has been and continues to be a supporter of the Communist movement. Included are associations and activities disclosed by or inferred from the Department of State files concerning the plaintiff as follows * * *".

In short, there can be no dispute that confidential information was employed; that files were not revealed; and that evidence contained therein could not be, and was not, subjected to cross-examination. See Transcript of Proceedings, May 6, 1955 of Hearing Panel of the Board of Passport Appeals, pages 62–67.

How can an applicant refute charges which arise from sources, or are based upon evidence, which is closed to him? What good does it do him to be apprised that a passport is denied him due to associations or activities disclosed or inferred from State Department files even if he is told of the associations and activities in a general way? What files? What evidence? Who made the inferences? From what materials were those inferences made?

To uphold § 51.170 would grant to the Government the right to deny passports in an uncontrolled manner, with virtually absolute authority, at any time and in any way it sees fit. The right to a quasi-judicial hearing must mean more than the right to permit an applicant to testify and present evidence. It must include the right to know that the decision will be reached upon evidence of which he is aware and can refute directly. See Dulles v. Nathan, D.C.Cir., 1955, 225 F.2d 29, 30–31. It is not enough that Section 51.170 requires the Board to take into consideration the inability of the applicant to meet the information of which he has not been advised, or to attack the credibility of confidential informants, for whether the Board does or does not do this no one can ever know.

Confidential information is of unquestionable importance to executive officers in performing their duty, but it should be confined for use in obtaining factual data which may itself be used of record. When the basis of action by any branch of the government remains hidden from scrutiny and beyond practical review, the seeds of arbitrary and irresponsible government are sown. More and more the courts have become aware of the irreparable damage which may be, has been, and is, wrought by the secret informer and faceless talebearer whose identity and testimony remains locked in confidential files. See Burrell v. Martin, D.C.Cir., 1955, —— F.2d ——; and Parker v. Lester, 9 Cir., 1955, 227 F.2d 708.

Section 51.170, when used in conjunction with 51.135, does not comport with due process. The case will be sent back to the Passport Office for a hearing within twenty days. All evidence upon which the Office may rely for its decision under Section 51.135 must appear on record so that the applicant may have the opportunity to meet it and the court to review it.