**Cornelius B. FORD, Appellant,**

v.

**Arthur E. SUMMERFIELD, Postmaster General, Appellee.**

**No. 13401.**

United States Court of Appeals District of Columbia Circuit.

Argued Feb. 12, 1957.

Decided Feb. 28, 1957.

Mr. Arthur A. Birney, Washington, D. C., with whom Mr. Peyton Ford, Washington, D. C., was on the brief, for appellant.

Mr. E. Tillman Stirling, Asst. U. S. Atty., with whom Messrs. Oliver Gasch,

U. S. Atty., Lewis Carroll and William F. Becker, Asst. U. S. Attys., were on the brief, for appellee.

Before WILBUR K. MILLER, DANAHER and BASTIAN, Circuit Judges.

DANAHER, Circuit Judge.

The District Court denied appellant's motion for, and granted summary judgment for the appellee. The plaintiff-appellant had claimed that as a rural mail carrier, he was entitled to certain benefits provided by the Seniority Act for Rural Mail Carriers,[1] but that the Act had been erroneously construed by the Postmaster General. Appellant particularly asked the District Court to declare that a consolidation of four rural routes in Charleston, Arkansas, had resulted in the establishment of three "new" routes, and accordingly that he be afforded injunctive relief restoring him to a route from which he had wrongfully been removed. The issues on appeal may readily be discerned from what follows.

Prior to November 1954, there were four rural mail routes in Charleston, Arkansas. The carrier servicing route No. 4 was to retire as of February 1, 1955, which made possible a consolidation of the four routes as authorized by 39 U.S.C.A. § 192a. Each of the three remaining carriers was to be assigned to some one of the rearranged routes. The statute contemplates that rural carriers in the order of their seniority are to be given a chance to apply for each new route. 39 U.S.C.A. § 216. Assuming their respective abilities are sufficient, seniority governs the award of a preferential assignment. 39 U.S.C.A. § 215. Clearly, the senior qualified rural carrier is entitled to first preference in assignment, and while the statute does not so provide in explicit terms, it is obvious that the next senior qualified rural carrier is entitled, upon application, to the next relatively preferential award.[2]

Here, one Robertson, with forty years seniority, applied for and was awarded the route vacated by the retiring carrier. Ford, with thirty-three years of seniori-

---

1. Act of May 18, 1948, c. 298, §§ 1–8, 62 Stat. 236, 39 U.S.C.A. §§ 213–219.

2. Congress so understood its action. S. Rep. No. 1228, 80th Cong., 2d Sess., 2 U.S.Code Cong. & Ad.News pp. 1543, 1544 (1918), said, in part: "Under ordinary conditions, it is conceded the Department does, entirely upon a permissive basis, grant rural carriers opportunity to be reassigned according to their seniority when vacancies occur at the post offices involved. However, the Department has not always followed this procedure. It is in order to provide the indicated regularization on a systematic basis that the present legislation is pending." It is clear from the Report that the Congress was not satisfied with the Department's assurances that "qualified senior employees are entitled to preferential assignments," for the Senate report concluded: "The committee is mindful that the Department has certain practices and certain policies but that neither practices nor policies are compelling and, therefore, lack the follow-through and authenticity of law."

In the House, Mr. Cole (Missouri), in charge of the bill, had earlier explained that " * * * the purpose of this legislation is to make it mandatory that the oldest carrier out of the post office shall be entitled to the best route when it is vacated." Otherwise on the House floor he indicated:

"Mr. Speaker, the bill provides for seniority out of a local post office on rural routes. For example, if there are three rural routes out of a town and one route becomes vacated then under my bill the oldest carrier out of that town has the right to fill that vacancy, and so on down the line.

"Under present practices the postmaster can put a new man who qualifies as rural carrier on a select route. This bill gives seniority to those who have been carrying the routes and who in many cases have been carrying a route that was not the most desirable."

* * * * *

Mr. Cole: " * * * let us say that there are four routes out of that post office—and one route becomes vacant, now, there are three men left carrying out of that post office; is that not correct? Any one of those men, the oldest in service first, can say, 'I want the route that has been vacated.' That does not disturb either of the others unless they want the route that is being vacated by the oldest man who is transferring * * *." 94 Cong.Rec. 320, 321 (1948).

ty at Charleston, applied for what had been Robertson's route, augmented in the course of rearranging the routes, as consolidated. However, Ford was not granted his preference. Instead, the rearranged Robertson route was given to one Wilson, with only eight years seniority, although the statute explicitly states that each rural carrier upon entering the service shall be assigned to the least desirable route and be entitled to rise to a more desirable route by seniority only.

The Government tells us that "when assignments are made due to consolidations of routes the Act does not apply, and the reassignments are made according to the long standing policy of the Post Office Department to assign carriers to the routes formerly served by them." But that is the very "policy" with which the Senate report reflected disagreement. The House had legislated in the light of the explanation that the preferential assignments were to be mandatory, in favor of the oldest carrier first and "so on down the line." That there were three "new" routes as a result of the consolidation and rearrangement, we have no doubt. We are satisfied that the Congress attached no mystery to its choice of language: "Each new route or vacancy shall be bulletined and all rural carriers attached to the office shall be given a chance to apply. The senior rural carrier who applies shall be assigned thereto as provided in section 215 of this title." 39 U.S.C.A. § 216. That Congress intended this provision to govern "so on down the line," is crystal clear. Assuming Ford's ability to be sufficient, "seniority shall govern." 39 U.S.C.A. § 215.

While it is certainly so that the courts will not compel an administrative officer to perform a duty which turns upon the exercise of his judgment and discretion, the plain language of the statute and the Congressional intent seem to us to be so obvious, we can only conclude that the Postmaster General has arrived at a clearly erroneous interpretation of the Seniority Act for Rural Mail Carriers.

The Regional Operations Manager advised Ford that " * * * after consolidation a vacancy was not in existence and Public Law 530 was not applicable." Perhaps there was no "vacancy," but there was certainly a "new" route, and we so hold.

To the extent that there may otherwise remain discretion to be exercised by the Postmaster General with reference to the assignment of the rural carriers at Charleston, we will not interfere. As we reverse the District Court's judgment, it is our purpose simply to preclude the Postmaster General's resting his award on a departmental policy contrary to the statute; in short, his decision may not rest upon the ground that consolidation of the four routes into three has not resulted in the creation of three new routes within the meaning of the Act.[3]

Reversed.

---

3. Cf. Perkins v. Elg, 1939, 307 U.S. 325, 350, 59 S.Ct. 884, 83 L.Ed. 1320; Shachtman v. Dulles, 1955, 96 U.S.App.D.C. 287, 292, 225 F.2d 938, 943.