Weldon Bruce DAYTON, Plaintiff,

v.

John Foster DULLES, Secretary of State, Defendant.

Civ. A. No. 4890-55.

United States District Court District of Columbia.

Dec. 21, 1956.

Harry I. Rand, Washington, D. C., for plaintiff.

George Cochran Doub, Asst. Atty. Gen., Oliver Gasch, U. S. Atty., Edward H. Hickey, Andrew P. Vance, Washington, D. C., for defendant.

McGARRAGHY, District Judge.

This is a proceeding in which the plaintiff prays for a judgment declaring (a) that he is entitled to a passport under the statutes of the United States; (b) that the passport regulations and rules of the Board of Passport Appeals are unlawful, invalid and illegal; (c) enjoining defendant (the Secretary of State) from continuing to deny a passport to plaintiff; and (d) directing defendant to issue a passport to plaintiff forthwith in standard form and for standard duration.

The plaintiff filed a motion for summary judgment. The defendant Secretary of State filed his answer, motion for summary judgment and affidavit of the Acting Secretary of State reciting the reasons for his decision denying plaintiff passport facilities. This Court held that the denial of plaintiff's application for a passport was a reasonable exercise of discretion by the Secretary of State under valid regulations, and that it was not in violation of the due process requirements of the Constitution, Amend. 5. Thereupon, an order was entered granting the defendant's motion for summary judgment and dismissing the complaint.

On appeal, Dayton v. Dulles, D.C.Cir., 237 F.2d 43, the Court of Appeals, following its decision in Boudin v. Dulles, 98 U.S.App.D.C. 305, 235 F.2d 532, held that instead of accepting the affidavit filed in support of the defendant's motion for summary judgment, the better practice requires that the denial of the passport itself should specify the regulations upon which it rests and should contain findings as called for by the Court's opinion in Boudin.

The Court of Appeals quoted from Boudin as applicable here that the Secretary should, if he refuses a passport, state whether his findings are based on the evidence openly produced or (in whole or in material part) on secret information not disclosed to the applicant. If the latter, the Secretary should explain with such particularity as in his judgment the circumstances permit, the nature of the reason why such information may not be disclosed. It was pointed out that this will facilitate the task of the Courts in dealing with the question of the propriety of the Secretary's use of confidential information —a question which was not reached in Boudin.

In a footnote to the quotation from Boudin, the Court of Appeals pointed out that if considerations of internal security rather than the conduct of foreign affairs are involved, the Secretary should so state.

Accordingly, the judgment heretofore entered herein was reversed and the case remanded to this Court for further proceedings not inconsistent with the opinion of the Court of Appeals.

Thereafter, the Secretary of State filed his "Decision and Findings in the case of Weldon Bruce Dayton" and transmitted a copy thereof to Mr. Dayton. The passport application was denied under Sec. 51.135(c) of the Passport Regulations and because the issuance of a passport would be contrary to the national interest.

The decision of the Secretary of State is divided into six numbered paragraphs, the first four of which have sub-paragraphs (a) and (b) respectively.

The sub-paragraphs (a) of the first four numbered paragraphs are based upon information contained in the open record and relate various associations and activities of the plaintiff.

Sub-paragraphs (b) of the first four numbered paragraphs are based on confidential information contained in the files of the Department of State indicating that a committee of which the plaintiff was at one time chairman, was conceived and organized by Communist party officials as a front for propaganda and espionage activities; that the individuals named as associates of the plaintiff in the organization of said committee were members of the Communist party at the time of their association with the plaintiff in the work of the committee; that another individual with whom the plaintiff was closely associated and with whom he resided for a period of time was an active member of the Communist party, and that he was involved in the espionage apparatus of Julius Rosenberg; that an apartment building in New York, where the plaintiff was present during 1949 and 1950 on more than one occasion, contained an apartment unit leased to the same individual with whom the plaintiff had been associated and which apartment unit was used by Julius Rosenberg and other members of his spy ring for the microfilming of classified United States Government documents which were ultimately transferred to a foreign power; and that the plaintiff's proposed travel abroad is to work in close collaboration with an individual who recently renounced his American citizenship, has held membership in the Communist party outside the United States, has engaged in numerous Communist activities both in this country and abroad, and is suspected of being a Communist espionage agent.

Paragraph V of the Decision and Findings by the Secretary states that he has reason to believe, on the balance of all the evidence, "that the applicant is

going abroad to engage in activities which will advance the Communist movement for the purpose, knowingly and willfully of advancing that movement." The Secretary states that he has reached this conclusion on the basis of the findings, together with the confidential information relating thereto *"as well as other confidential information contained in the files of the Department of State, the disclosure of which might prejudice the conduct of United States foreign relations."* (Emphasis supplied.)

Paragraph VI states that the confidential information referred to in subparagraphs (b) of paragraphs I, II, III, and IV, relates to the internal security of the United States; that the substance of this confidential information was disclosed to the applicant during the consideration of his passport application and that to disclose publicly the sources and details of this information would, in the judgment of the Secretary of State, "be detrimental to our national interest by compromising investigative sources and methods and seriously interfering with the ability of this Department and the Executive Branch to obtain reliable information affecting our internal security. Moreover, it would have an adverse effect upon our ability to obtain and utilize information from sources abroad and interfere with our established relations in the security and intelligence area; and might, with respect to information referred to in paragraph V, prejudice the interest of the United States foreign relations."

The case is again before the Court on cross motions for summary judgment making substantially the same contentions as originally argued.

We now have a decision and findings by the Secretary of State made in conformity with the ruling of the Court of Appeals and reciting that the denial of plaintiff's passport application was pursuant to the provisions of Sec. 51.135(c) of the Passport Regulations and also detailing the extent of confidential information relied upon in denying the passport, explaining the nature of and the reason why such information may not be disclosed.

In his motion for summary judgment, the plaintiff renews his attack upon the validity of the Passport Regulations and contends that, assuming the validity of the Regulations, the defendant's denial of a passport to plaintiff violates due process.

The defendant contends that the Regulations are valid; that the discretionary action of the Secretary of State in granting or denying passports is subject to judicial review, if at all, only to the extent necessary to determine whether the Secretary of State has denied a passport on stated grounds which are "arbitrary" and, therefore, do not support his ultimate determination and that, on the open record, without reference to the confidential information in the Department's files, the Secretary would have been justified in rendering the same decision and that his denial of plaintiff's application was not an abuse of discretion. The defendant further contends that if the Court reaches this question, the Secretary validly relied on confidential information and there was no denial of due process in view of the reasons given by the Secretary for its non-disclosure.

### The Validity of Regulations

The regulation under which the passport application was denied provides as follows:

"§ 51.135 *Limitation on Issuance of Passports to Persons Supporting Communist Movement.* In order to promote the national interest by assuring that persons who support the world Communist movement of which the Communist Party is an integral unit may not, through use of United States passports, further the purposes of that movement, no passport, except one limited for direct and immediate return to the United States, shall be issued to:

"(a) * * *

"(b) * * *

"(c) Persons, regardless of the formal state of their affiliation with the Communist Party, as to whom there is reason to believe, on the balance of all the evidence, that they are going abroad to engage in activities which will advance the Communist movement for the purpose, knowingly and willfully of advancing that movement."

Title 22 U.S.C.A. § 211a authorizes the Secretary of State to grant and issue passports "under such rules as the President shall designate and prescribe for and on behalf of the United States."

The President, by Executive Order March 31, 1938, No. 7856, 3 F.R. 799, Title 22 C.F.R., Sec. 51.1 et seq., authorized the Secretary of State "in his discretion to refuse to issue a passport, to restrict the passport for use only in certain countries, to restrict it against use in certain countries, to withdraw or cancel a passport already issued, and to withdraw a passport for the purpose of restricting its validity or use in certain countries."

Sec. 126 of the Executive Order authorized the Secretary of State "to make regulations on the subject of issuing, renewing, extending, amending, restricting, or withdrawing passports additional to these rules and not inconsistent therewith."

It was pursuant to this redelegation of power by the President that the Secretary of State issued the regulation under which the plaintiff was denied passport facilities.

■ It has been held in numerous decisions that heads of the several Executive Departments may act for the President where Congress has committed a matter specifically to the President. Hegler v. Faulkner, 153 U.S. 109, 117, 14 S.Ct. 779, 38 L.Ed. 653; Russell Motor Car Co. v. United States, 261 U.S. 514, 523, 43 S.Ct. 428, 67 L.Ed. 778; Cole v. Young, 96 U.S.App.D.C. 379, 226 F.2d 337, reversed on other grounds 351 U.S. 536, 76 S.Ct. 861, 100 L.Ed. 1396.

■ As was said in Bauer v. Acheson, D.C., 106 F.Supp. 445, 449, which dealt specifically with the Executive Order now under consideration, "It is clear that the authority to issue passports necessarily implies authority also to regulate their use and to withdraw them."

And in Shachtman v. Dulles, 96 U.S. App.D.C. 287, 290, 225 F.2d 938, 941, the Court said:

"World conditions, and those in particular areas, as to which the Executive has special information and on the basis of which he is especially qualified to make decisions, bear upon the question. For reasons thus suggested the issuance of passports throughout our history has been left to the judgment of the Secretary of State under Presidential regulation, and is subject only to constitutional safeguards. And even these must be defined with cautious regard for the responsibility of the Executive in the conduct of foreign affairs."

■ It is my opinion that the regulation under which the Secretary acted is valid under the authority of the Act of Congress and the Executive Order cited.

### The Question of Due Process

The plaintiff contends that the denial of his passport application violates procedural due process requirements of the Constitution since it is based on "confidential information in defendant's files, secret and undisclosed to plaintiff"; and violates substantive due process since it is not supported by substantial evidence but rather is contrary to the evidence of record.

The findings by the Secretary of State in sub-paragraphs (a) of paragraphs I, II, III, and IV are based on information contained in the open record, including plaintiff's statements. An extensive hearing was held before the Board of Passport Appeals on January 18, 1955, at which the plaintiff testified and was represented by counsel and was in-

terrogated by counsel for the defendant in connection with derogatory information against the plaintiff, the substance of which had been disclosed to the plaintiff during the consideration of his passport application. A second hearing was convened at which three witnesses were called by the Government and cross-examined by plaintiff's counsel. These hearings and the statements of the plaintiff are the basis of the findings by the Secretary on the open record.

The full significance of the findings under sub-paragraphs (a) can be determined only by reference to sub-paragraphs (b) which are based on confidential information contained in the files of the Department of State, the substance of which was disclosed to the applicant during consideration of his passport application but the sources and details of which were not disclosed in view of the judgment of the Secretary of State that such disclosure would be detrimental to our national interest by compromising investigative sources and methods and seriously interfere with the ability of the State Department and the Executive Branch to obtain reliable information affecting our internal security.

Moreover, the Secretary found that such disclosure would have an adverse effect upon our ability to obtain and utilize information from sources abroad and interfere with our established relationships in the security and intelligence area.

Also, the Secretary states that the conclusion reached with respect to the plaintiff is based not only upon the confidential information referred to in paragraphs I, II, III and IV, but also on "other confidential information contained in the files of the Department of State, the disclosure of which might prejudice the conduct of the United States foreign relations."

In the light of the foregoing, it is my opinion that the denial of a passport to the plaintiff did not violate either procedural or substantive due process.

To hold otherwise would be to say that any citizen of the United States desiring a passport for the purpose of going abroad to engage in activities which will advance the Communist movement could force issuance of the passport unless the Secretary of State made disclosures detrimental to our national interest, affecting our internal security, and prejudicing the conduct of the United States foreign relations.

Such a holding would be contrary to a body of decisions which recognize the complicated, delicate and manifold problems relating to our foreign relations and the fact that such relations are largely immune from judicial inquiry or interference. Latvian State Cargo & Passenger S. S. Line v. McGrath, 88 U.S. App.D.C. 226, 188 F.2d 1000, certiorari denied 342 U.S. 816, 72 S.Ct. 30, 96 L.Ed 617; United States v. Curtiss-Wright Export Corporation, 299 U.S. 304, 57 S.Ct. 216, 81 L.Ed. 255; Harisiades v. Shaughnessy, 342 U.S. 580, 72 S.Ct. 512, 96 L.Ed. 586.

As was pointed out in Shachtman v. Dulles, supra, the issuance of passports throughout our history has been left to the judgment of the Secretary of State under Presidential regulation and is subject only to Constitutional safeguards and "even these must be defined with cautious regard for the responsibility of the Executive in the conduct of foreign affairs." [96 U.S.App.D.C. 287, 225 F. 2d 942.]

As was observed by Mr. Justice Holmes in Moyer v. Peabody, 212 U.S. 78, 84, 29 S.Ct. 235, 236, 53 L.Ed. 410, "It is familiar that what is due process of law depends on circumstances. It varies with the subject-matter and the necessities of the situation."

Mr. Justice Frankfurter pointed out in Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 163, 71 S.Ct. 624, 644 that "Due process is not a mechanical instrument. It is not a yard-

stick. It is a process. It is a delicate process of adjustment inescapably involving the exercise of judgment by those whom the Constitution entrusted with the unfolding of the process."

In Betts v. Brady, 316 U.S. 455, 462, 62 S.Ct. 1252, 1256, 86 L.Ed. 1595, the Court said:

"That which may, in one setting, constitute a denial of fundamental fairness, shocking to the universal sense of justice, may, in other circumstances, and in the light of other considerations, fall short of such denial."

■ In addition to providing protection to the rights of individual citizens, the Constitution also recognizes interests of the Government and when conflicts arise, they can be resolved only by "balancing the conflicting individual and national interests involved." American Communications Ass'n, C. I. O. v. Douds, 339 U.S. 382, 410, 70 S.Ct. 674, 690, 94 L.Ed. 925.

■ The essence of the plaintiff's claim is that he is entitled to confrontation of all witnesses and that denial of such confrontation constitutes a denial of due process.

This contention asserts for the plaintiff in an administrative proceeding a right of confrontation conferred only on defendants in criminal actions and is not supported by authority where the question has been raised in administrative proceedings. Norwegian Nitrogen Products Co. v. United States, 288 U.S. 294, 53 S.Ct. 350, 77 L.Ed. 796; and Williams v. People of State of New York, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337, are contrary to the plaintiff's contentions.

It seems to me that the Supreme Court disposed of the problem when, in Chicago & Southern Air Lines, Inc., v. Waterman S. S. Corp., 333 U.S. 103, 111, 68 S.Ct. 431, 436, 92 L.Ed. 568, it said:

"The President, both as Commander-in-Chief and as the Nation's organ for foreign affairs, has available intelligence services whose reports are not and ought not to be published to the world. It would be intolerable that courts, without the relevant information, should review and perhaps nullify actions of the Executive taken on information properly held secret. Nor can courts sit in camera in order to be taken into executive confidences."

 In my opinion, the Court must accept the reasons advanced by the Secretary of State for not disclosing the source of the confidential information referred to and, under the circumstances of this case, the manner and use of confidential information accords with both procedural and substantive due process.

The defendant's motion for summary judgment will be granted and the plaintiff's motion for summary judgment will be denied.

Counsel for defendant will submit an appropriate order.