DAYTON *v.* DULLES, SECRETARY OF STATE.

No. 621.   Argued April 10, 1958.—Decided June 16, 1958.

*Harry I. Rand* argued the cause and filed a brief for petitioner.

*Solicitor General Rankin* argued the cause for respondent.   With him on the brief were *Assistant Attorney General Doub, Samuel D. Slade* and *B. Jenkins Middleton.*

*Nathan H. David* for the Federation of American Scientists and *Sanford H. Bolz* for the American Jewish Congress filed a brief, as *amici curiae,* urging that the judgment below be set aside.

Mr. Justice Douglas delivered the opinion of the Court.

Petitioner, a native-born citizen, is a physicist who has been connected with various federal projects and who has been associated as a teacher with several of our universities. In March 1954 he applied for a passport to enable him to travel to India in order to accept a position as research physicist at the Tata Institute of Fundamental Research, affiliated with the University of Bombay. In April 1954 the Director of the Passport Office advised him that his application was denied because the Department of State "feels that it would be contrary to the best interest of the United States to provide you passport facilities at this time."

Petitioner conferred with an officer of the Passport Office and as a result of that conversation executed an affidavit [1] which covered the wide range of matters inquired into and which stated in part:

> "I am not now and I have never been a member of the Communist Party.
>
> "With the possible exception of a casual and brief association with the work of the Joint Anti-Fascist Refugee Committee for a few months in 1941 and in 1942 (all as related below); I am not now and have never been a member of any of the organizations

---

[1] The Passport Regulations of the Secretary of State, as amended, 22 CFR § 51.142, provide:

"At any stage of the proceedings in the Passport Division or before the Board, if it is deemed necessary, the applicant may be required, as a part of his application, to subscribe, under oath or affirmation, to a statement with respect to present or past membership in the Communist Party. If applicant states that he is a Communist, refusal of a passport in his case will be without further proceedings."

designated on the Attorney General's list (which I have carefully examined).

"I am not now engaged and I have never engaged in any activities which, so far as I know or at any time knew, support or supported the Communist movement.

"I wish to go abroad for the sole purpose of engaging in experimental research in physics at the Tata Institute of Fundamental Research in Bombay. I am not going abroad to engage in any activities which, so far as I know or can imagine, will in any way advance the Communist movement."

The Director of the Passport Office wrote petitioner's lawyer in reply that the Department had given careful consideration to the affidavit and added, "in view of certain factors of Mr. Dayton's case which I am not at liberty to discuss with him, the Department must adhere to its previous decision that it would be contrary to the best interests of the United States to provide Mr. Dayton with passport facilities at this time." Later the Director wrote again, saying:

"In arriving at its decision to refuse passport facilities to Mr. Dayton, the Department took into consideration his connection with the Science for Victory Committee and his association at that time with various communists. However, the determining factor in the case was Mr. Dayton's association with persons suspected of being part of the Rosenberg espionage ring and his alleged presence at an apartment in New York which was allegedly used for microfilming material obtained for the use of a foreign government."

Thereupon petitioner, pursuant to the Passport Regulations of the Secretary of State, as amended, 22 CFR § 51.1 et seq., filed a petition of appeal, with the Board

of Passport Appeals.[2] He also requested, pursuant to the Regulations,[3] information from the Board of particulars concerning three items: (1) petitioner's alleged "association with various communists"; (2) his "association with persons suspected of being part of the Rosenberg espionage ring"; and (3) his "alleged presence at an apartment in New York which was allegedly used for microfilming material obtained for the use of a foreign government." The Board's reply contained some, but very little, of the information requested; and it stated:

"The file contains information indicating that the applicant was present at 65 Morton Street, New York City in the summer of 1949 (July or August) and at Apartment 61, 65 Morton Street, New York

---

[2] § 51.138. "In the event of a decision adverse to the applicant, he shall be entitled to appeal his case to the Board of Passport Appeals provided for in § 51.139."

§ 51.139. "There is hereby established within the Department of State a Board of Passport Appeals, hereinafter referred to as the Board, composed of not less than three officers of the Department to be designated by the Secretary of State. The Board shall act on all appeals under § 51.138. The Board shall adopt and make public its own rules of procedure, to be approved by the Secretary, which shall provide that its duties in any case may be performed by a panel of not less than three members acting by majority determination. The rules shall accord applicant the right to a hearing and to be represented by counsel, and shall accord applicant and each witness the right to inspect the transcript of his own testimony."

[3] § 51.162. "The purpose of the hearing is to permit applicant to present all information relevant and material to the decision in his case. Applicant may, at the time of filing his petition, address a request in writing to the Board for such additional information or explanation as may be necessary to the preparation of his case. In conformity with the relevant laws and regulations, the Board shall pass promptly and finally upon all such requests and shall advise applicant of its decision. The Board shall take whatever action it deems necessary to insure the applicant of a full and fair consideration of his case."

City, during the month of January 1950. The applicant's relationship, if any (past or present), with the following-named persons is considered pertinent to the Board's review and consideration of the case: Marcel Scherer, Rose Segure, Sandra Collins, Frank Collins, Bernard Peters, Kurt Fritz, Karl Sitte, Louis S. Weiss, Alfred Sarant, and William Perl."

A hearing was held[4] at which witnesses for petitioner and for the State Department testified. Pursuant to the Regulations[5] the Board announced, over petitioner's protest, that it would consider "a confidential file composed of investigative reports from Government agencies" which petitioner would not be allowed to examine.[6]

---

[4] Section 51.163 of the Regulations provides:

"The Passport file and any other pertinent Government files shall be considered as part of the evidence in each case without testimony or other formality as to admissibility. Such files may not be examined by the applicant, except the applicant may examine his application or any paper which he has submitted in connection with his application or appeal. The applicant may appear and testify in his own behalf, be represented by counsel subject to the provisions of § 51.161, present witnesses and offer other evidence in his own behalf. The applicant and all witnesses may be cross-examined by any member of the Board or its counsel. If any witness whom the applicant wishes to call is unable to appear personally, the Board may, in its discretion, accept an affidavit by him or order evidence to be taken by deposition. Such depositions may be taken before any person designated by the Board and such designee is hereby authorized to administer oaths or affirmations for the purpose of the depositions. The Board shall conduct the hearing proceedings in such manner as to protect from disclosure information affecting the national security or tending to disclose or compromise investigative sources or methods."

[5] Note 4, *supra*.

[6] The Regulations in providing for that contingency state:

§ 51.170. "In determining whether there is a preponderance of evidence supporting the denial of a passport the Board shall consider the entire record, including the transcript of the hearing and such

Later petitioner was advised by the Acting Secretary of State that the Board had submitted its recommendation and that the Secretary, after "a review of the entire record and on the basis of all the evidence, including that contained in confidential reports of investigation," had denied the application. The denial was rested specifically upon § 51.135 of the Regulations.[7]

Petitioner then brought suit in the District Court for declaratory relief. The District Court entered summary judgment for the Secretary. The Court of Appeals reversed, 99 U. S. App. D. C. 47, 237 F. 2d 43, and remanded the case to the Secretary for reconsideration in

---

confidential information as it may have in its possession. The Board shall take into consideration the inability of the applicant to meet information of which he has not been advised, specifically or in detail, or to attack the credibility of confidential informants."

[7] That section provides:

"In order to promote the national interest by assuring that persons who support the world Communist movement of which the Communist Party is an integral unit may not, through use of United States passports, further the purposes of that movement, no passport, except one limited for direct and immediate return to the United States, shall be issued to:

"(a) Persons who are members of the Communist Party or who have recently terminated such membership under such circumstances as to warrant the conclusion—not otherwise rebutted by the evidence—that they continue to act in furtherance of the interests and under the discipline of the Communist Party;

"(b) Persons, regardless of the formal state of their affiliation with the Communist Party, who engage in activities which support the Communist movement under such circumstances as to warrant the conclusion—not otherwise rebutted by the evidence—that they have engaged in such activities as a result of direction, domination, or control exercised over them by the Communist movement;

"(c) Persons, regardless of the formal state of their affiliation with the Communist Party, as to whom there is reason to believe, on the balance of all the evidence, that they are going abroad to engage in activities which will advance the Communist movement for the purpose, knowingly and wilfully of advancing that movement."

the light of its earlier decision in *Boudin* v. *Dulles,* 98 U. S. App. D. C. 305, 235 F. 2d 532.

On remand the Secretary without further hearing denied the application under § 51.135 (c),[8] saying that "the issuance of a passport would be contrary to the national interest." The Secretary at this time filed a document called "Decision and Findings" which is reproduced as an Appendix to this opinion.

The District Court again granted summary judgment for the Secretary, 146 F. Supp. 876; and the Court of Appeals affirmed by a divided vote, 102 U. S. App. D. C. 372, 254 F. 2d 71. The case is here on a petition for a writ of certiorari. 355 U. S. 911.

The question most discussed in the briefs and on oral argument is whether the hearing accorded petitioner satisfied the requirements of due process. A majority of the Court thinks we need not reach that constitutional question, since on their face these findings show only a denial of a passport for reasons which we have today held to be impermissible. *Kent* v. *Dulles, ante,* p. 116. Whether there are undisclosed grounds adequate to sustain the Secretary's action is not here for decision.

*Reversed.*

## APPENDIX TO OPINION OF THE COURT.

### Decision and Findings of the Secretary of State in the Case of Weldon Bruce Dayton

I have examined the files of the Department of State concerning the passport application of Weldon Bruce Dayton, including the proceedings in the Passport Office and before the Board of Passport Appeals, including confidential security information, and have found and concluded as follows:

---

[8] Note 7, *supra.*

## I.

a. I find that applicant was active in the Science for Victory Committee while at the University of California during 1943–44, serving as Chairman of the organization during much of that period. As Chairman he associated with Frank and Sandra Collins, and Rose Segure, who had been instrumental in organizing the said organization. This finding is based on information contained in the open record, including applicant's own statements.

b. Confidential information contained in the files of the Department of State, constituting a part of the record considered by the Passport Office, the Board of Passport Appeals, and myself, indicates that the above-named organization was conceived and organized by Communist Party officials as a front for propaganda and espionage activities; and that Frank and Sandra Collins and Rose Segure were members of the Communist Party at the time of their association with applicant and the Science for Victory Committee.

## II.

a. I find that during the period 1946–1950, at Ithaca, New York, applicant maintained a close association and relationship with one Alfred Sarant. At applicant's invitation, Sarant and his wife lived in applicant's home for a period of eight months in 1947–1948, pending the completion of the Sarant home next door to applicant's home. Thereafter Dayton and Sarant were neighbors until July, 1950. On approximately July 18, 1950, Sarant became the subject of intensive interrogation by the Federal Bureau of Investigation. Approximately a week after the interrogation had begun Sarant departed from Ithaca and subsequently entered Mexico with applicant's wife. This finding is based on information contained in the open record, including applicant's own statements.

b. Confidential information contained in the files of the Department of State, constituting a part of the record considered by the Passport Office, the Board of Passport Appeals, and myself, establishes with respect to Alfred Sarant that he was an active member of the Communist Party; that he admitted said membership during the years 1943 and 1944; and that he was involved in the espionage apparatus of Julius Rosenberg.

### III.

a. I find that the applicant was present during 1949 and 1950, on more than one occasion, in the apartment building at 65 Morton Street, New York City, in which Alfred Sarant was lessee of apartment 6–I. This finding is based on information contained in the open record.

b. Confidential information contained in the files of the Department of State, constituting a part of the record considered by the Passport Office, the Board of Passport Appeals, and myself, indicates that Sarant's apartment at 65 Morton Street, New York City, was used by Julius Rosenberg and other members of his spy ring for the microfilming of classified United States Government documents which were ultimately transferred to a foreign power.

### IV.

a. I find that since 1938 the applicant, an experienced physicist, has maintained a close association and relationship with one Bernard Peters; that Peters was responsible for the applicant's offer of employment at the Tata Institute of Fundamental Research, Bombay, India; and that one of the primary stated purposes of the applicant's proposed travel abroad is to work in close collaboration with Peters at the Tata Institute. This finding is based on information contained in the open record, including applicant's own statements.

b. Confidential information contained in the files of the Department of State, constituting a part of the record considered by the Passport Office, the Board of Passport Appeals, and myself, indicates that Bernard Peters, who recently renounced his American citizenship, has held membership in the Communist Party outside of the United States; has engaged in numerous Communist activities both in this country and abroad; and is suspected of being a Communist espionage agent.

## V.

I have reason to believe, on the balance of all the evidence, that the applicant is going abroad to engage in activities which will advance the Communist movement for the purpose, knowingly and wilfully of advancing that movement. I have reached this conclusion on the basis of the foregoing findings together with the confidential information relating thereto, as well as other confidential information contained in the files of the Department of State, the disclosure of which might prejudice the conduct of United States foreign relations. I have also taken into consideration the serious doubts as to applicant's general credibility raised by the applicant's denial in the face of convincing contrary evidence, including the oral testimony of three apparently disinterested witnesses of ever having been present at 65 Morton Street. The passport application of Weldon Bruce Dayton is therefore denied under Section 51.135 (c) of the Passport Regulations (22 CFR § 51.135 (c)), and because the issuance of a passport would be contrary to the national interest.

## VI.

The confidential information referred to in paragraphs I (b), II (b), III (b) and IV (b) above relates to the internal security of the United States. The substance

of this confidential information was disclosed to the applicant during the consideration of his passport application. To disclose publicly the sources and details of this information would, in my judgment, be detrimental to our national interest by compromising investigative sources and methods and seriously interfering with the ability of this Department and the Executive Branch to obtain reliable information affecting our internal security. Moreover, it would have an adverse effect upon our ability to obtain and utilize information from sources abroad and interfere with our established relationships in the security and intelligence area; and might, with respect to information referred to in paragraph V, prejudice the interest of United States foreign relations.

Date: October 4, 1956.

Mr. Justice Clark, with whom Mr. Justice Burton, Mr. Justice Harlan, and Mr. Justice Whittaker concur, dissenting.

On the grounds stated in my dissent to *Kent* v. *Dulles, ante,* p. 130, also decided this day, I think the Secretary of State is authorized to deny a passport to an applicant who is going abroad with the purpose of engaging in activities that would advance the Communist cause. Because the majority does not consider any of the constitutional issues raised by petitioner, it would be inappropriate for me, as a dissenter, to consider them at this time. Cf. *Peters* v. *Hobby,* 349 U. S. 331, 353–357 (1955). Accordingly, I would affirm on the question of authority without reaching any constitutional issue.