Theodulo Nava **REYES**, Appellant,

v.

**UNITED STATES of America,** Appellee.

Federico **PEREZ**, Appellant,

v.

**UNITED STATES of America,** Appellee.

Nos. 15756, 15851.

United States Court of Appeals Ninth Circuit.

July 17, 1958.

See also 155 F.Supp. 914.

15756:

Louis S. Katz, San Diego, Cal., for appellant.

Laughlin E. Waters, U. S. Atty., Los Angeles, Cal., William A. Seavey, San Diego, Cal., Lloyd F. Dunn, Asst. U. S. Attys., Los Angeles, Cal., for appellee.

15851:

Irwin Gostin, San Diego, Cal., for appellant.

Before BARNES and HAMLEY, Circuit Judges, and CLARK, District Judge.

BARNES, Circuit Judge.

Each appellant was convicted of a violation of 18 U.S.C. § 1407. This statute became effective as of July 18, 1956.

## I. The Statute

Because of the language used in that statute, and particularly in its preamble, we quote the entire section:

" § 1407. Border crossings—narcotic addicts and violators.

"(a) In order further to give effect to the obligations of the United States pursuant to the Hague convention of 1912, proclaimed as a treaty on March 3, 1915 (38 Stat. 1912), and the limitation convention of 1931, proclaimed as a treaty on July 10, 1933 (48 Stat. 1571), *and in order to facilitate more effective control of the international traffic in narcotic drugs,* and to prevent the spread of drug addiction, no citizen of the United States who is addicted to or uses narcotic drugs, as defined in section 4731 of the Internal Revenue Code of 1954, as amended (except a person using such narcotic drugs as a result of sickness or accident or injury and to whom such narcotic drug is being furnished, prescribed, or administered in good faith by a duly licensed physician in attendance upon such person, in the course of his professional practice) or who has been convicted of a violation of any of the narcotic or marihuana laws of the United States, or of any State thereof, the penalty for which is imprisonment for more than one year, *shall depart from or enter into or attempt to depart from or enter into the United States,* unless such person registers, under such rules and regulations as may be prescribed by the Secretary of the Treasury with a customs official, agent, or employee at a point of entry or a border customs station. Unless otherwise prohibited by law or Federal regulation such customs official, agent, or employee shall issue a certificate to any such person departing from the United States; and such person shall, upon returning to the United States, surrender such certificate to the customs official, agent, or employee present at the port of entry or border customs station.

"(b) Whoever violates any of the provisions of this section shall be punished for each such violation by a fine of not more than $1,000 or imprisonment for not less than one nor more than three years, or both." [Emphasis added.]

Appeals from the convictions below lie here. 28 U.S.C. § 1291.

## II. Facts

It was stipulated in the lower court that Reyes, a citizen of the United States, pleaded guilty on June 4, 1943, to a charge of possession of marijuana then proscribed by § 11160 (now § 11500) of the Health and Safety Code of the State of California. Reyes was charged with a felony, but sentenced to only sixty days in the County Jail. Reyes, subsequent to the passage of § 1407 of Title 18, never registered as a narcotic violator, nor did he apply for the "departure" certificate mentioned in said section. No such certificate was issued. On the morning of March 4, 1957 Reyes left the United States for Mexico and returned, entering the United States on that date without registering or otherwise complying with the statute.

At the trial three questions were asked Reyes—as to his knowledge of the law; whether he had an intent to violate it; and, whether or not he had seen any signs at the border requiring him to register. The United States Attorney objected that knowledge and intent were immaterial. The objections were sustained.

It was stipulated below that Perez, a United States citizen, did not at any

time register or apply for a "departure" certificate, nor was any certificate issued. There was no evidence of the date when Perez left this country, but it was stipulated that with respect to his entry to the United States on April 28, 1957, Immigration Inspector Maxon would testify Perez told him "he had been convicted for 'marks' (addiction) in Los Angeles in 1956;" that he had used narcotics that day in Mexico; that Maxon saw numerous apparent needle scars on Perez' arm; that when examined by flashlight the pupils of Perez' eyes did not react naturally; that in Maxon's opinion Perez was then under the influence of narcotics. It was stipulated a doctor would have testified Perez was under the influence of narcotics the day of his entry; Perez would have testified he was illiterate, could not read or write, and had no knowledge of § 1407 and no intent to violate it.

On such stipulated facts the district court judge found each appellant guilty as charged.

### III. The Assignments of Error

As to each defendant, error is charged —*first,* in the court's refusal to permit evidence of defendant's lack of knowledge of the statute and lack of intent to violate it; *second,* that the statute is unconstitutional because it is indefinite, arbitrary and capricious, and violates due process safeguards because (a) of its uncertainty, and (b) its restriction on a citizen's right to travel; and *third,* the statute is unconstitutional because it deprives affected persons of their privilege against self-incrimination.

As to Reyes alone, it was additionally urged that his two months sentence was not a conviction of a violation of a narcotic law, "the penalty for which is imprisonment for more than one year," as the statute requires.

1. Cf. Jones v. Rhay, 9 Cir., 1958, 254 F. 2d 393; Daloia v. Rhay, 9 Cir., 1958, 252 F.2d 768.

2. We borrow from that opinion its conclusion on this point:

### IV. The Reyes Conviction Was Within the Statute

We first dispose of Reyes' individually claimed error. Former section 11160 of the California Health and Safety Code (now section 11500) made possession of marijuana a crime. Section 11712 of that same code made punishment for conviction of possession "imprisonment in the county jail for not more than one year, or in the state prison for not more than 10 years."

Thus the *penalty* for the crime of which Reyes was convicted was imprisonment for a period of time which could be either under or over one year. The court saw fit to fix the penalty as imprisonment for two months. It could have fixed the penalty as two years, or ten years. Either sentence could not have been attacked by Reyes as unlawful. The length of sentence was within the discretion of the trial court.

Section 1407 does not say that the section applies only if "the penalty *imposed* is imprisonment for more than one year." It says if "convicted of a *violation* * * * the *penalty for which* is imprisonment for more than one year." At the time of Reyes' conviction, he had been convicted of a violation the penalty for which was imprisonment for more than one year. That the Superior Court judge, at the time of sentence, saw fit to give Reyes a lesser sentence did not affect the fact of his conviction of a crime, the *penalty for which* was in excess of one year.[1]

This point was carefully considered in the able opinion rendered by United States District Judge Carter in United States v. Eramdjian, D.C.S.D.Cal., 1957, 155 F.Supp. 914, 931.[2]

With his reasoning and conclusions we agree. Reyes was convicted of violation

"The question hinges on the meaning of the words in Sec. 1407, 'the penalty for which is imprisonment for more than one year.'

"We hold it refers to the penalty which was provided for by the State statute,

of a narcotic law, the penalty for which was imprisonment for more than a year.

## V. Constitutionality of the Statute

■ We next consider the alleged error that the statute is unconstitutional because indefinite, arbitrary and capricious, because it violates due process in

requiring one by registration to incriminate himself, and because it interferes with his right to travel.

We are satisfied these arguments were adequately met and answered in the opinion in the Eramdjian case, to which we have heretofore referred. In disposing of these issues, we adopt such portion of that opinion as is quoted in the margin.[3]

i. e. what was the *penalty* provided in such statute which could have been invoked, and not the actual *punishment* imposed in the particular case.

"The Congress of the United States, without doubt, was familiar with the federal rule as to what constitutes a felony or misdemeanor conviction and that such determination is made by reason of the penalties provided in a statute—i. e. what penalty could have been invoked, and not the punishment actually imposed.

"Moreover, the clear meaning of the word 'penalty' refers to the provisions of the statute generally and not to the 'punishment' imposed in the particular case. Had Congress intended otherwise, it could easily have so stated. It did not." Ibid.

3. "The court takes judicial notice of the great numbers of persons intercepted upon entering the United States at points of entry and particularly at San Ysidro, within this District, carrying quantities of narcotics and marihuana; of the number of criminal cases in the courts of the United States and in the southern division of the southern district of California, concerning narcotics and marihuana; of the large number of such persons who, prior to arrest, were either addicted to the use of narcotics, or were prior users of marihuana or had been previously convicted in state or federal courts of violation of narcotic or marihuana laws; that such classes of persons are prone to engage in illicit traffic in drugs; that one of the most disruptive factors in the effective control of the traffic in narcotics and marihuana is the smuggling of such substance across the international boundary.

"It is a fair and logical conclusion from such facts, that special attention, scrutiny, registration and recording of such classes of persons most prone to smuggle such drugs into the United States, to be made upon the occasion of their leaving the United States and particularly on their return to the United States from Mexico, would materially assist in controlling the illicit traffic in narcotics and

marihuana across the international boundary.

"I.

"The Questions Raised.

"The statute provides in part, that 'no citizen of the United States who is addicted to or uses narcotic drugs * *' etc. We pause to note that this provision as to the *addict* or *user* applies only to narcotic drugs and not to marihuana. The statute incorporates the definition of narcotic drugs from Sec. 4731, Internal Revenue Code of 1954, 26 U.S.C.A. § 4731. The omission here of marihuana is apparently because marihuana itself is not a substance causing physical addiction thereto, although psychological addition may result. However, marihuana has a definite relationship to the narcotic and crime problem. * * *

"It is contended that the words, 'who is addicted to or uses narcotic drugs,' are too uncertain to be used in stating a public offense and that therefore the statute violates the Fifth Amendment.

"The statute next refers to one 'who has been convicted of a violation of any of the narcotic or marihuana laws of the United States, or of any State thereof * * *'. Here marihuana laws have been included and properly so, because of the relationship of marihuana to the drug problem.

"The statute proceeds, 'the penalty for which is imprisonment for more than one year.' One of the cases at bar presents questions of interpretation of the statute, where the actual sentence imposed by a state court was less than one year. Contention is made that 'penalty' applies to the punishment actually imposed and that the word 'is' has some controlling significance. We hereafter discuss these problems.

"The statute next states, 'shall depart from or enter into or attempt to depart from or enter into the United States unless such person registers' with a designated official 'at a point of entry or a border customs station.'

"Here the contention of defendants is that the statute abridges a constitutional right to travel or to leave or enter the

A proper consideration of the constitutional contentions focuses attention on the precise language of the indictments

before us. In the Reyes indictment, No. 15756, the defendant is charged as a citizen and a convicted narcotic violator

United States and therefore violates the Fifth Amendment. We likewise discuss the problem. Finally, the statute requires the surrender of the certificate upon returning to the United States.

"These cases also raise a question as to whether or not the requirement of registration violates the provisions of the Fifth Amendment in requiring a party to be a witness against himself, allegedly requiring him to confess a crime, and the related question as to whether the information supplied would constitute a 'link in the chain' leading to incrimination.

\* \* \* \* \*

"III.
"The Crimes Set Forth in the Statute and the Indictments.

"The statute in part reads in (a) '\* \* \* No citizen of the United States \* \* \*' specifying the prohibited classes, '\* \* \* shall depart from or enter into \* \* \* the United States \* \* \* *unless such person registers, under such rules and regulations as may be prescribed by the Secretary of the Treasury* with a customs official, agent, or employee at a point of entry or a border customs station.' Such official, etc., 'shall issue a certificate to any such person departing from the United States; and such person shall, upon returning to the United States, surrender such certificate' to the official, etc.

" '(b) Whoever violates *any of the provisions* of this section shall be punished \* \* \*'. [Emphasis supplied.] ⁹

"The Acting Secretary of the Treasury under date of January 9, 1957, adopted the rules and regulations referred to in the statute. They were filed as F.R. Doc. 57–338 on January 16, 1957 and appear in Vol. 22, No. 12, p. 348 of the Federal Register. The form, type and manner of registration is not spelled out in the statute. But Congress might properly delegate the making of rules and regulations covering such regulations, to the Secretary of the Treasury. Standard Oil Co. of California v. Johnson, 1942, 316 U.S. 481, 484, 62 S.Ct. 1168, 86 L.Ed. 1611.

"Rules and regulations properly promulgated and within the authority of the rule making authority, have the form and effect of law. Standard Oil Co. of California v. Johnson, supra; Shapiro v. United States, 1948, 335 U.S. 1, 68 S.Ct. 1375, 92 L.Ed. 1787.

"The regulations (22 Fed.Reg. 348) provide that the person required to register 'shall register his departure from the United States with the collector of customs at the port of departure on Customs Form 3231, Registration Certificate of Narcotic User or Violator. The original shall be given to the registrant who, upon his return to the United States shall register with the collector of customs at the point of arrival by signing before a customs officer and in the space provided for this purpose on the original and by surrendering the completed form to the customs official.'

"The regulations above are definite, and describe plainly the *how, when* and *where* of the registration required. They are in accord with the statute which requires registration upon *departing* from and *entering* the United States. The regulations take into account and jibe with the statutory requirement of the *issuance* of a certificate to a person departing from, and the *surrender* of such certificate by such person, upon returning to the United States.

"The regulations are in accord with the legislative intent of Congress as shown in its reports, where Congress interprets the law as requiring specified classes of persons 'to register and obtain a certificate \* \* \* when leaving the United States and to surrender the certificate upon re-entry.' We conclude the regulations are valid and together with the statute clearly defined the crimes thus created by Congress.

"Several crimes, with respect to persons in the specified classes, are included in the statute. Sec. 1407(b), Title 18 U.S.C.A., provides a penalty for one who violates '*any* of the provisions of this section.' Such *crimes are:*

"(1) to depart from the United States without registering,

"(2) to attempt to depart from the United States without registering,

"(3) to enter the United States without registering,

"(4) to enter the United States without surrendering the certificate,

"(5) to attempt to enter the United States without registering,

"(6) to attempt to enter the United States without surrendering the certificate.

"We think under (1) and (2) above, the substance of the crime is the failure to register. The obtaining of the certifi-

with returning to and entering the United States "without registering with a customs official * * * and without surrendering the certificate."

The Perez indictment, No. 15851, similarly charged, except that the defendant was brought within the statute by being identified as a citizen "who was then addicted to and used narcotic drugs."

Considering what is charged in the indictments, a further portion of Judge Carter's opinion in Eramdjian is pertinent:

"Thus each indictment charges 'return to and enter into the United States * * * without registering * * * and without surrendering the certificate.' When read without considering the regulations describing the registration, it might appear that the 'registering' referred to registration when leaving the United States. But when the regulation is taken into account it is clear that

the 'registering' referred to is that required on returning to the United States." 155 F.Supp. 923.

Judge Carter then discusses the essentials of proof: (a) citizenship; (b) the defendant's return to and entering into the United States; (c) the lack of registration at the time of return and entry; (d) in violation cases, certified copies of a prior conviction; and in addiction and user cases, either admissions, evidence of present use, and/or expert testimony to support addiction or use. He concludes that the alleged incriminating registration slip is *not* used against the defendant—he is prosecuted for *not* registering and for *not* surrendering the certificate; he is not prosecuted for making the certificate or for any fact appearing therein.

The court continues in the Eramdjian case with a discussion of the alleged unconstitutionality of the statute. We adopt as our own that portion of the opinion now quoted in the margin,[4] and

cate is not an element of this crime. Obtaining the certificate is for the registrant's benefit to facilitate his lawful return to the United States.

"In the breakdown above (3) and (4), the failure to register upon returning to the United States and the failure to surrender the certificate are separate offenses. But the two acts are so closely related that charging them in one count, in the absence of a special attack on the indictment for duplicity, would not be improper. The same would be true of (5) and (6)." Id. 155 F.Supp. at pages 918–922.

4.　"V. The Constitutional Attack.
"Various attacks are made on the statute, varying with the particular case. The gravamen of the attack centers on the constitutionality of the statute.
* * * * *
"1. *Alleged incrimination.*
"It is contended that the statute requires an admission or confession of a crime and since no immunity clause is included, the statute is unconstitutional in view of the Fifth Amendment. Although there is no federal crime penalizing mere *possession* of narcotics, proof of possession of narcotics (§ 174, U.S. C.A. Title 21), or marihuana (§ 176a, U.S.C.A. Title 21), unexplained, is sufficient evidence upon which to predicate

a conviction under the foregoing statutes. It is argued that if a person registered under Sec. 1407, U.S.C.A. Title 18, and stated he was a user or addicted to the use of narcotics, he would be forthwith subject to a prosecution. The contention is not correct.

"(1) There is no requirement that the registrant state he has or has had *possession* of narcotics. Such an inference might be possible but is not a necessary or compelled inference. A person could be a user or an addict and never have handled or possessed narcotics. Others might have given the injections.

"(2) No statement is required from the registrant as to *when* or *where* he used or was addicted. He may have used in Mexico or Canada, and he may be addicted from such use. His prior use may have been at a time beyond the statute of limitations. Standing alone, his statement he was a user or addicted would enable no prosecutor to secure an indictment since a necessary element of a narcotics crime is an allegation that the offense occurred within the territorial jurisdiction of the court.

"(3) The privilege against self incrimination does not extend to matters which might tend to incriminate a witness under the laws of another jurisdiction. United States v. Murdock, 1931, 284 U.S. 141,

we concur in Judge Carter's conclusions. We find the law constitutional, as did he.

We come now to the evidentiary questions—the court's refusal to permit evi-

149, 52 S.Ct. 63, 76 L.Ed. 210; Feldman v. United States, 1944, 322 U.S. 487, 64 S.Ct. 1082, 88 L.Ed. 1408.

The case of Adams v. State of Maryland, 1954, 347 U.S. 179, 74 S.Ct. 442, 444, 98 L.Ed. 608, is not opposed to the above cases but rested on the breadth of the words, 'in any court' used in the immunity statute involved. The fact that possession of narcotics would be a crime under state law (e. g. Sec. 11500, California Health and Safety Code) does not permit the invocation of the Fifth Amendment against the registration required in 18 U.S.C.A. § 1407.

"2. *Exceptions to the operation of the Fifth Amendment.*

"Another principle of law is here worthy of consideration. Various types of evidence supplied by a defendant, have been held to be exceptions to or without the scope of the Fifth Amendment.

"In discussing the constitutional privilege under that Amendment, the Supreme Court held;—'* * * The privilege which exists as to private papers cannot be maintained in relation to "records required by law to be kept in order that there may be suitable information of transactions which are the appropriate subjects of governmental regulation, and the enforcement of restrictions validly established."' Shapiro v. United States, 1948, 335 U.S. 1, at page 33, 68 S.Ct. 1375, 1392, 92 L.Ed. 1787; Davis v. United States, 1946, 328 U.S. 582, 589–590, 66 S.Ct. 1256, 90 L.Ed. 1453; Wilson v. United States, 1911, 221 U.S. 361, 380, 31 S.Ct. 538, 55 L.Ed. 771; Boyd v. United States, 1886, 116 U.S. 616, 624, 6 S.Ct. 524, 29 L.Ed. 746; Stillman v. United States, 9 Cir., 1949, 177 F.2d 607, 617.

"Likewise, where statutes require the making of reports, applications, declarations or the filing of a registration, such material in the hands of a government agency is admissible in a criminal prosecution against the maker, and their use does not violate the Fifth Amendment.

"Such statutes bring into play the underlying principle of Warszower v. United States, 1941, 312 U.S. 342, 61 S. Ct. 603, 85 L.Ed. 876, since the statements or declarations required to be made, occurred before the commission of the offense which was later charged.

"There are numerous categories in the application of the rule that the use of reports, statements or applications, made prior to the commission of an offense, does not violate the Fifth Amendment; viz. (1) Selective Service and Draft cases; (2) Income tax prosecutions; (3) Prosecutions under Rent Control; (4) Prosecutions under the Price Control Act; (5) Customs cases; (6) Nationality offenses." Id., 155 F.Supp. at pages 925–926.

Judge Carter then discusses each type of case last mentioned hereinabove, and finds them persuasive in the solution of the constitutional problem here posed.

"Under Sec. 1407, Title 18 U.S.C.A., the person using or addicted to narcotics or the convicted violator of state or United States narcotic or marihuana laws is required to register. His registration is not compulsory, in that he may choose not to leave the United States and therefore not to register.

"Like the filing of income tax returns, the registration is 'not made in compliance with a subpoena or court order * * * or under threat of prosecution or induced by any form of compulsion save that reflected in the duty' to comply with the law, Stillman v. United States, 9 Cir., 1949, 177 F.2d 607, 618. 'No criminal case is pending, and the immediate purpose is information and not prosecution.' Shushan v. United States, 5 Cir., 1941, 117 F.2d 110, 117.

"Although Lewis v. United States, 1955, 348 U.S. 419, 75 S.Ct. 415, 99 L. Ed. 475, involving the tax on wagering, 26 U.S.C.A. (I.R.C.1939) § 3290 et seq., and a required registration, construed the statute as operating prospectively, nevertheless some of the language in the case is of interest. 'The fact that he may elect to pay the tax and make the prescribed disclosures required by the Act is a matter of his choice. There is nothing compulsory about it, and, consequently, there is nothing violative of the Fifth Amendment. * * * The only compulsion under the Act is that requiring the decision which would-be gamblers must make at the threshold. * * *' (348 U.S. at page 422, 75 S.Ct. at page 418).

"At the time of registration the registrant has committed no crime and no crime is revealed by his registration. Our case differs from most of the situations set forth above, in that if he registers, no prosecution is predicated thereon. In fact, it can be argued that the classes of cases referred to above constitute a broader exception to the Fifth Amendment than does Sec. 1407, Title 18 U.S.C.A., in that in such cases and situations the registration or statements made can thereafter be an integral part

dence (a) of each defendant's lack of intent to violate the statute, and (b) of his lack of knowledge of its existence.

### VI. Lack of Intent to Violate the Statute

Here we believe Morissette v. United States, 1952, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288; United States v. Behrman, 1922, 258 U.S. 280, 42 S.Ct. 303, 66 L.Ed. 619; United States v. Balint, 1922, 258

U.S. 250, 42 S.Ct. 301, 66 L.Ed. 604, are controlling.

As Judge Carter points out in Eramdjian (155 F.Supp. at pages 924–925) we start with the proposition that the statute does not by its term require a wilful violation of the statute; that the statute creates a crime *mala prohibita,* and not *malum in se,* and hence is the type of legislative enactment described in the

of a prosecution for a crime. Here the situation is the reverse. If registration is made no prosecution can be based upon the honest registration. If the registration is false, that is if a person falsely claimed he was a user or addicted to the use of narcotics, or was a convicted violator of narcotic laws (an almost impossible situation) then a prosecution might result for false statement to a government agency.

"3. *A later claim of privilege.*

"Where the defendant fails to register, we do not believe he can later, at time of trial, claim any privilege against self incrimination. The cases involving income tax returns indicate that any claim of privilege should have been made in connection with filing the return. United States v. Sullivan, 1927, 274 U.S. 259, 47 S.Ct. 607, 71 L.Ed. 1037; Stillman v. United States, 9 Cir., 1949, 177 F.2d 607, 618; Shushan v. United States, 5 Cir., 1941, 117 F.2d 110, 117–118.

"In United States v. Kahriger, 1953, 345 U.S. 22, at page 32, 73 S.Ct. 510, 515, 97 L.Ed. 754, wherein the court sustained the constitutionality of a tax on wagering, 26 U.S.C.A. (I.R.C.1939) § 3290 et seq., the court said:

" 'Since the appellee failed to register for the wagering tax, it is difficult to see how he can now claim the privilege even assuming that the disclosure of violations of law is called for.'

"We likewise fail to see how the defendant who refuses or fails to register can later claim the privilege against self incrimination, even assuming that the registration would show a violation of law, which we do not believe it does.

"4. *'Link in the chain' argument.*

"Defendants contend that the registration provides a 'link in the chain' of evidence that might be used to convict and thus falls within the rule of Hoffman v. United States, 1951, 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118; Blau v. United States, 1950, 340 U.S. 159, 161, 71 S.Ct. 223, 95 L.Ed. 170, and similar cases.

"One notes immediately that such cases involve *compulsory* testimony before a

court or grand jury and hence the witness had *no choice.* Here the person involved may choose to register and leave the United States or not register and remain. Although this statement immediately distinguishes the 'link in the chain' cases, it leads into the next question, i. e. the impact of the statute on the constitutional right to travel.

"If this possible interference with the right to travel is a proper realm for congressional action and does not violate constitutional provisions pertaining thereto, we have no doubt that the element of choice available to the prospective registrant under Sec. 1407, Title 18 U.S. C.A., makes inapplicable Hoffman and Blau, supra and similar cases.

"5. *Right to travel.*

"Williams v. Fears, 1900, 179 U.S. 270, 21 S.Ct. 128, 129, 45 L.Ed. 186, involved the Fourteenth Amendment and the power of a state to tax an 'emigrant agent' and whether the tax burdened *interstate* commerce. The tax was held proper and the court said:

" ' *   *   *  Undoubtedly the right of locomotion, the right to remove from one place to another according to inclination, is an attribute of personal liberty, and the right, ordinarily, of free transit from or through the territory of any state is a right secured by the 14th Amendment and by other provisions of the Constitution. *   *   * '

"In the cases at bar the statute must comply with the provisions of the constitution applicable to the federal government. This is the Fifth Amendment, —'No person shall be  *   *   *  deprived of  *   *   *  liberty  *   *   *  without due process of law,' Shachtman v. Dulles, 1955, 96 U.S.App.D.C. 287, 225 F.2d 938, 940, 941, 'What is arbitrary, however, in the sense of constituting a denial of due process, depends upon circumstances,' Shachtman, supra, 225 F.2d 941, citing cases. We do not find the Shachtman case otherwise helpful. Nor does Kraus v. Dulles, 1956, 98 U.S.App.D.C. 343, 235 F.2d 840, another passport case, teach anything except that an ad-

Morissette case as that " 'now familiar type of legislation whereby penalties serve as effective means of regulation'," which " 'dispenses with the conventional requirement for criminal conduct— awareness of some wrongdoing. In the interest of the larger good it puts the burden of acting at hazard upon a person otherwise innocent but standing in responsible relation to a public danger.' " 342 U.S. at pages 259–260, 72 S.Ct. at page 248.

In Morissette, the Supreme Court pointed out that such a view of the law, enunciated in the Behrman and Balint cases and in United States v. Dotterweich, 1943, 320 U.S. 277, 280, 281, 64 S.Ct. 134, 88 L.Ed. 48, causes hardship— " 'Hardship there doubtless may be under a statute which thus penalizes the transaction though consciousness of wrongdoing be totally wanting.' " 342 U.S. at page 260, 72 S.Ct. at page 248. Yet when dealing with narcotics and their regulation and control (as did Behrman and Balint, and as does § 1407 here),

the same "larger good" found sufficient by the Supreme Court must be here considered paramount.

## VII. Lack of Knowledge of the Statute

This alleged erroneous ruling was not before the court in the Eramdjian case, but is before us now because of the recent ruling of the Supreme Court in Lambert v. United States, 1957, 355 U.S. 225, 78 S.Ct. 240, 2 L.Ed.2d 228.

The Lambert case dealt with a Municipal Ordinance of the City of Los Angeles which (a) defined a "convicted person" as one "convicted of an offense punishable as a felony in the State of California," or one convicted elsewhere of an offense which "if committed in the State of California, would have been punished as a felony," [5] and (b) required any such "convicted person" to register with the Chief of Police if he was to be or remain in the City of Los Angeles more than five days.[6] By its terms, no element of wilfulness was included in the ordinance.

ministrative denial of a passport must be reasonable and not arbitrary and that the denial is subject to review." Id., 155 F.Supp. 927–929. See, also, Kent v. Dulles, 357 U.S. 116, 78 S.Ct. 1113, 2 L.Ed.2d 1204, and Dayton v. Dulles, 357 U.S. 144, 78 S.Ct. 1127, 2 L.Ed.2d 1221.

"The right to travel is not an absolute one, free of all restraint or regulation. The right of free speech, in comparison, must yield to the delicate balancing of interests, public and private. Schenck v. United States, 1919, 249 U.S. 47, 39 S.Ct. 247, 63 L.Ed. 470; Gitlow v. New York, 1925, 268 U.S. 652, 45 S.Ct. 625, 69 L.Ed. 1138; Dennis v. United States, 1951, 341 U.S. 494, 71 S.Ct. 857, 95 L.Ed. 1137.

"There are of course the familiar restraints on travel, such as the Dyer Act [18 U.S.C.A. § 2311 et seq.] and the Mann Act [18 U.S.C.A. § 2421 et seq.] where a certain set of facts has been found by Congress to be a federal crime within the power of Congress to regulate interstate and foreign commerce. In fact all regulations of interstate or foreign commerce involving *persons* are restraints on the right of free travel.

"Such statutes are comparable to the statutes here, in that Congress has here determined that crossing the border by

a particular class of persons is illegal without prior registration.

"Chapter 18, Title 15 U.S.C.A. concerning the transportation of firearms in interstate and foreign commerce is a restraint on travel in certain situations. Sec. 902(e), Title 15 U.S.C.A., makes it unlawful for a person under indictment, or who has been convicted of a crime of violence or is a fugitive, to transport across a border any firearm.

"Although the constitution, in Amendment II guaranteed the right of the people to 'keep and bear Arms' the firearms statute was held not a violation of that amendment. Cases v. United States, 1 Cir., 1942, 131 F.2d 916, certiorari denied Cases Valazquez v. U. S., 319 U.S. 770, 63 S.Ct. 1431, 87 L.Ed. 1718, rehearing denied 324 U.S. 889, 65 S.Ct. 1010, 89 L.Ed. 1437.

"We believe it within the power of Congress and not a violation of due process under the Fifth Amendment to require that citizens of the United States who are narcotic users or addicts, or who have been convicted of narcotic and marihuana laws, register before crossing the international boundary." Id., 155 F. Supp. at page 929.

5. Los Angeles Municipal Code § 52.38(a).

6. Id. § 52.39.

The Supreme Court assumed Mrs. Lambert had no knowledge of its existence. She had been convicted of forgery seven years before her arrest for failing to register. Forgery is a felony in California. Mrs. Lambert never registered.

The majority opinion in Lambert lays down no rule that intent is essential in every crime. It recognizes the authority of legislative bodies "to declare an offense and to exclude elements of knowledge and diligence from its definition." But it points out and largely relies on the fact that the conduct of Mrs. Lambert was without knowledge of the law; hence without intent; and "is wholly passive—mere failure to register. * * * Violation of its (the ordinance's) provisions is unaccompanied by any activity whatever, mere presence in the city being the test. Moreover, circumstances which might move one to inquire as to the necessity of registration are completely lacking." 355 U.S. at pages 228, 229, 78 S.Ct. at page 242.

And Mr. Justice Douglas, in speaking for the majority, states that the Lambert conviction rested on facts, "*unlike* the commission of acts, or the failure to act under circumstances that should alert the doer to the consequences of his deed," 355 U.S. at page 228, 78 S.Ct. at page 242, citing Belint, supra, and Dotterweich, supra.

The question in the Lambert case was "whether *a registration act of this character* violates Due Process where it is applied to a person who has no actual knowledge of his duty to register, and where no showing is made of the probability of such knowledge." 355 U.S. at page 227, 78 S.Ct. at page 242. (Emphasis added.)

We readily distinguish the Lambert case and hold it not applicable to the registration provisions of 18 U.S.C. § 1407 for the following reasons:

*First:* Here there was no mere nonfeasance on the part of Reyes and Perez —there was misfeasance. They crossed the border (ordinarily lawful) in an unlawful manner (without registering).

*Second:* If the failure to register could be considered a mere failure to act, unaccompanied by and unrelated to the positive act of leaving the country and returning across the border, yet such failure plus the planned departure is "under circumstances that should alert the doer to the consequence of his deed." Crossing the border into a foreign country is a lawful act, but it is rarely a totally unrestricted act. It is a comparatively uncommon act for a great majority of citizens, even those residing in the near vicinity of our borders. Certainly *it is uncommon in comparison to* Mrs. Lambert's act—that of living in the community of Los Angeles. A border crossing seems sufficient in itself to put a person on notice or inquiry to determine if he is required by law to do anything when he proposes to, or prior to the time he does, so depart from the United States. And we would be blind to the realities of life were we not to realize that such inquiry would particularly be the responsibility of narcotic violators, addicts and users as they cross into Mexico, for they know better than anyone else, save law enforcement officers, that that country is the primary source to the rest of the North American Continent of the forbidden heroin and marijuana. We believe the act, after conviction or addiction, of crossing into Mexico and attempting to return "alerts the doer" and is attended by circumstances which "move one to inquire as to the necessity of registration."

■■ *Third:* The statute under consideration here, unlike that in the Lambert case, is not a mere convenient aid to police departments' bookkeeping, enabling the officers to keep an eye on likely criminals. The preamble to section 1407 indicates the intent of Congress to curb the importation of narcotics. This Court has taken[7] and will again take judicial notice (as did the

7. Blackford v. United States, 9 Cir., 1957, 247 F.2d 745, certiorari denied 356 U.S. 914, 78 S.Ct. 672, 2 L.Ed.2d 586.

court below [8]) of the great public danger that there will be attempts to smuggle such drugs into the country every time an addict or user crosses the boundary line.[9] The purpose of the statute is not to keep track of potential narcotic law violators and obtain convictions—its primary purpose, as expressed in its preamble and from a logical consideration of the problem, is to reduce and control the amount of illegal narcotics crossing the border by checking carefully the person and possessions of those most likely to be importing the drugs.

Whether or not Mr. Justice Frankfurter is correct in his estimate of Lambert as "a derelict on the waters of the law," [10] defining police power, does not here concern us. We hold the holding of the majority in Lambert inapplicable, both on its facts and its reasoning, to the statute involved in the instant cases.

Judgments affirmed.

---

8. United States v. Eramdjian, D.C.1957, 155 F.Supp. 914, 918.

9. "Narcotic offenders are generally recidivistic in that the addict by definition is engaged in a course of repetitious behavior and those engaged in selling narcotics are predominantly either professionals or addicts." Criminal Registration Ordinances, 103 U. of Pa.L.Rev. 60, 67, n. 38 (1954).

10. Lambert v. United States, 1957, 355 U.S. 225, 230, 232, 78 S.Ct. 240, 245, 2 L.Ed.2d 228 (dissent).